Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Carolyn M. Aguilar, Esq. (SBN: 289550)
caguilar@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, California 94588
Telephone:   (510) 999-7908
Facsimile:   (510) 999-7918

Attorneys for Defendant
AMY WAKELAND

ORBACH HUFF + HENDERSON LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERMAN MANNING, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AMY WAKELAND, an individual, Sergeant SMITH, an individual, CITY OF LOS ANGELES; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.  21-cv-08358-FMO-KS<br><br>**DECLARATION OF KEVIN E. GILBERT IN SUPPORT OF DEFENDANT AMY WAKELAND'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AND SPECIAL MOTION TO STRIKE, PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16**<br><br>DATE:    November 30, 2022<br>TIME:    10:00 a.m.<br>DEPT:    Courtroom 580, 5th Floor<br>JUDGE:  Magistrate Karen L. Stevenson |

I, Kevin E. Gilbert, if called upon to testify will competently testify as follows:

1.      I am an attorney at law duly licensed to practice in the State of California and the United States of America.  I am an attorney with the law firm of Orbach Huff + Henderson, LLP, attorneys of record for Defendant AMY WAKELAND in the above-referenced matter.  I have personal knowledge of the matters set forth herein below and if called upon to testify will competently testify thereto.

2.      Beginning on or about September 16, 2022, I engaged in direct communications with counsel for Plaintiff SHERMAN MANNING regarding the defenses and immunities raised by Defendant Wakeland in this Motion.  On or about October 14, 2022, I forwarded further correspondence to counsel for Plaintiff which addressed the arguments and issues to be advanced in Defendant's Motion for Summary Judgment and Special Motion to Strike pursuant to California Code of Civil Procedure section 425.16 ("Motions").  Thereafter, I personally spoke with Plaintiff's counsel to discuss Plaintiff's claims and the defenses thereto, as well as to provide additional details regarding Defendant's anticipated Motions.  That conference occurred on October 19, 2022, and did not resolve the issues raised in the Motions.

3.      Attached hereto as **Exhibit A** are true and correct excerpts from the Deposition of Sherman Manning, taken on September 8, 2022.

4.      Attached hereto as **Exhibit B** are true and correct excerpts from the Deposition of Amy Wakeland, taken on September 9, 2022.

5.      Attached hereto as **Exhibit C** is a true and correct copy of the live-stream video taken by Plaintiff on April 28, 2020, and produced in this matter.

6.      On or about May 2, 2022, Plaintiff filed his First Amended Complaint ("FAC") in the United States District Court, Central District (Dkt. 24), for the above-referenced litigation.  A true and correct copy of Plaintiff's FAC is attached hereto as **Exhibit D**.

///

///

ORBACH HUFF + HENDERSON LLP

Dec of Gilbert ISO Wakeland's MSJ or, in the Alt, Partial SJ & Special Mtn to Strike CCP § 425.16 [21-cv-8358-FMO-KS]

7.    Attached hereto as **Exhibit E** is a true and correct copy of the Notice of Removal (Dkt. 1), filed October 21, 2021, in this matter, attaching as Exhibit 1 therein a copy of Plaintiff's original Complaint, filed in Los Angeles Superior Court, dated April 26, 2021.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 26th day of October, 2022, in Pleasanton, California.

_/s/ Kevin E. Gilbert_
Kevin E. Gilbert
Attorney for Defendant
AMY WAKELAND

ORBACH HUFF + HENDERSON LLP

Dec of Gilbert ISO Wakeland's MSJ or, in the Alt, Partial SJ & Special Mtn to Strike CCP § 425.16 [21-cv-8358-FMO-KS]

# EXHIBIT A

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


SHERMAN MANNING, an individual,

                 Plaintiff,

vs.                     No. 21-cv-08358-FMO-KS

AMY WAKELAND, an individual,
Sergeant SMITH, an individual,
CITY OF LOS ANGELES; and DOES 1
through 10, inclusive,

                 Defendants.

_____/

**CERTIFIED TRANSCRIPT**


DEPOSITION OF SHERMAN MANNING


Taken remote via Zoom Meeting before CHRISTY CURRY, CSR

Certified Shorthand Reporter No. 13982

State of California

Thursday, September 8, 2022

925-831-9029                                    emerickfinch@emerickfinch.com

Page 2

1                          I N D E X

2                                                    PAGE

3     EXAMINATION BY MR. GILBERT                   6, 286

4     EXAMINATION BY MR. SCHOLAR                   224

5     EXAMINATION BY MR. LEE                       252

6

7                       E X H I B I T S

8   EXHIBITS:                                       PAGE

9          No exhibits marked.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

    1                    DEPOSITION OF SHERMAN MANNING

    2

    3        BE IT REMEMBERED that pursuant to Notice of Taking

    4    Deposition, and on Thursday, September 8, 2022,

    5    commencing at the hour of 11:01 a.m., remote via Zoom

    6    Meeting, before me, CHRISTY CURRY, CSR No. 13982, a

    7    Certified Shorthand Reporter in and for the State of

    8    California, personally appeared

    9                        SHERMAN MANNING,

   10        produced as a witness in the above-entitled action,

   11    who being by me first duly sworn, was thereupon examined

   12    as a witness in said action.

   13

   14        CHRISTIAN CONTRERAS, HUMBERTO M. GUIZAR, ATTORNEYS

   15    AT LAW, Law Offices of Humberto Guizar, 3500 West

   16    Beverly Boulevard, Montebello, California 90640,

   17    (323)725-1151, appeared remote via Zoom Meeting as

   18    counsel on behalf of the Plaintiff Sherman Manning.

   19

   20        KEVIN E. GILBERT, ATTORNEY AT LAW, Orbach Huff

   21    Henderson, LLP, 6200 Stoneridge Mall Road, Suite 225,

   22    Pleasanton, California 94588, (510)999-7908, appeared

   23    remote via Zoom Meeting as counsel on behalf of the

   24    Defendant Amy Wakeland.

   25    ///

925-831-9029                                    emerickfinch@emerickfinch.com

Page 4

1          RONALD J. SCHOLAR, ATTORNEY AT LAW, Cole Huber,

2    LLP, 2281 Lava Ridge Court, Suite 300, Roseville,

3    California 95661, (916)780-9009, appeared remote via

4    Zoom Meeting as counsel on behalf of the Defendant City

5    of Los Angeles.

6

7          CHRISTOPHER D. LEE, ATTORNEY AT LAW, Everett Dorey,

8    LLP, 18300 Von Karman Avenue, Suite 900, Irvine,

9    California 92612, (949)771-9233, appeared remote via

10   Zoom Meeting as counsel on behalf of the Defendant

11   Sergeant Smith.

12

13                         ---o0o---

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1    Thursday, September 8, 2022                    11:01 a.m.

2                        ---o0o---

3

4          THE VIDEOGRAPHER:  Good morning.  This begins

5    video No. 1, volume 1, in the deposition of Sherman

6    Manning in the matter of Sherman Manning versus Amy

7    Wakeland, being heard in the US District Court for the

8    Central District of California.  Case number is

9    21-cv-08358-FMO-KS.  Today's date is September 8th,

10   2022.  Time, approximately 11:02 a.m.

11         This deposition is being taken remotely via Zoom

12   Videoconference.  The court reporter producing the

13   official transcript today is Christy Curry of Emerick

14   and Finch Certified Shorthand Reporters.  Videographer,

15   Steve Patapoff of Media Edge, LLC.

16         Will counsel please identify yourselves and

17   state whom you represent.

18         MR. GILBERT:  Go ahead, Christian.

19         MR. CONTRERAS:  Good morning.  Christian

20   Contreras on the behalf of Plaintiff Sherman Manning.

21         MR. GILBERT:  Good morning.  Kevin Gilbert on

22   behalf of Defendant Amy Wakeland.

23         MR. LEE:  Good morning.  Christopher Lee on

24   behalf of Defendant Sergeant Smith.

25         MR. SCHOLAR:  Good morning.  Ronald Scholar on

Page 6

1    behalf of the City of Los Angeles.

2            THE VIDEOGRAPHER:  Would the court reporter

3    please swear in the witness.

4                        (Witness sworn.)

5                    EXAMINATION BY MR. GILBERT

6    BY MR. GILBERT:

7    Q.      Good morning, sir.  My name is Kevin Gilbert.

8    We met very briefly before we began.  I represent

9    Ms. Amy Wakeland.  Do you understand you're here to give

10   a deposition today in a case that you filed?

11   A.      Yes.

12   Q.      Have you had a chance to meet with your attorney

13   before today?

14   A.      Yes.

15   Q.      Are you comfortable proceeding today?

16   A.      Yes.

17   Q.      Now, I know -- it looks like you're in a

18   vehicle.  Are you okay to talk in there? Or do we need

19   to give you some time to find a location that you're

20   comfortable and have a quiet atmosphere?

21   A.      No.  I'm fine.

22   Q.      Okay.  Thank you, sir.  If you need to take a

23   break for any reason, you are welcome to do so.  Just

24   tell me, and we are happy to let you do so.  If you need

25   to speak with your attorney at any time, also please

Page 8

1          MR. CONTRERAS:  Same objection.  Go ahead and

2    answer.

3          THE WITNESS:  Based on the false arrest and

4    conspiracy by Sergeant Smith and Amy Wakeland to have me

5    arrested while I was conducting a lawful protest on

6    behalf of the homeless in Los Angeles.

7    BY MR. GILBERT:

8    Q.      And can you tell me what you mean by conducting

9    a protest?

10   A.      What is it that you do not understand about a

11   protest?

12   Q.      What were you -- how were you protesting?

13   A.      By carrying a sign, walking up and down the

14   street, demanding that the mayor house the homeless

15   people of Los Angeles during the COVID-19 emergency.

16   Q.      And other than the actions you have discussed,

17   were there any other actions you were engaged in that

18   you believe constituted a protest?

19   A.      Certainly.

20   Q.      What are those other actions, sir?

21   A.      Speaking out on behalf of the homeless,

22   organizing, galvanizing on behalf of the homeless,

23   speaking with members of the press on behalf of the

24   homeless, speaking with members of the mayor's team on

25   behalf of the homeless, and speaking with members of the

925-831-9029                                      emerickfinch@emerickfinch.com

Page 9

1    mayor's personal security detail on behalf of the

2    homeless.

3           Now, you are frozen on the screen, by the way.

4    Am I fine?  Because, Mr. Gilbert, you're frozen.  You

5    have been frozen for the last 30 seconds.

6    Q.    Yes, sir.  You're fine, coming through for us.

7    A.    Okay.

8    Q.    Can you hear me okay?

9    A.    I can hear you, but you're still frozen.  But I

10   guess as long as you can hear me, we can go if you want

11   to go.

12   Q.    Yeah.  That's fine.  Please tell me if you have

13   any problems.  But so long as you can hear me, I'm okay

14   proceeding.  If you do want to adjourn until we can find

15   a wi-fi connection for you, that is fine as well.  Just

16   let me know your preference.

17   A.    (Inaudible).

18   Q.    Now, sir, when did you start meeting with the

19   mayor or anyone on behalf of the mayor regarding your

20   protests?

21   A.    I don't have the dates completely because I

22   haven't reviewed any documents.

23   Q.    I'm sorry.  You haven't reviewed any documents?

24   Is that what you said?

25   A.    I have not reviewed any documents, so I don't

Page 12

```
 1    record for a minute, counsel?

 2              MR. GILBERT:  Up to Mr. Manning.

 3              THE WITNESS:  Up to Christy.  I'm just going

 4    back inside so you can hopefully pick me up.

 5    BY MR. GILBERT:

 6    Q.      Much better.  Thank you.

 7    A.      Okay.

 8    Q.      Thank you, sir.

 9    A.      Am I better?

10    Q.      Do you recall the date that you were arrested in

11    the incident giving rise to this matter?

12    A.      No.

13    Q.      I'm sorry.  Was that a no, sir?

14    A.      No.  I don't recall the date.

15    Q.      If I told you April 28, 2020, did that -- would

16    that sound accurate?

17    A.      It sounds accurate.

18    Q.      I'm sorry.  I didn't hear that, sir.  You broke

19    up.

20    A.      It sounds accurate.

21    Q.      Thank you.  Now, regarding the protest and the

22    meetings with the mayor's -- mayor and the mayor's

23    representatives and people on his behalf, did those

24    actions begin before or after you were arrested on

25    April 28th, 2020?
```

Page 13

1    A.        Before.

2    Q.        How far before?  Are we talking days?  Weeks?

3    Or some other measure of time?

4    A.        Days.

5    Q.        Did you personally meet with the mayor?

6    A.        No.

7    Q.        Did you try and meet with the mayor?

8    A.        No.  The mayor tried to meet with me.

9    Q.        When did the mayor try to meet with you?

10   A.        Approximately three days into the protest he had

11   his chief of staff, I think her name might have been

12   Gurrero or something like that, to call me on the phone

13   and request a Zoom meeting to discuss the protests.  I

14   was in front of his house protesting at the time that I

15   received the call.

16   Q.        And do you know how the mayor's chief of staff

17   received your phone number to contact you?

18   A.        No.

19   Q.        Did you accept the mayor's invitation to have a

20   Zoom meeting with him?

21   A.        No.  Because they didn't -- no.  I did not.

22   Q.        Why did you refuse the invitation to meet with

23   the mayor by zoom?

24   A.        Because I requested that -- first of all there

25   were -- I requested that three or four homeless people

Page 14

1    be allowed to attend the Zoom with me.  And again I

2    think her name was Gurrero, she said the mayor would

3    only be willing to meet with me by Zoom.  And so

4    communications broke down after that.

5    Q.      What three or four homeless individuals did you

6    want to attend that Zoom meeting?

7    A.      Random homeless people who had been protesting

8    sporadically with me.

9    Q.      Did you have somebody that you had already

10   contacted to join you through that Zoom meeting?

11   A.      No, because it was spur of the moment.  But I

12   certainly had people in mind that I was going to bring

13   to the Zoom meeting.

14   Q.      What was your purpose of bringing those random

15   homeless people to the Zoom meeting with the mayor?

16   A.      So it would not be a whitewash situation where I

17   was going to meet with some power broker to make myself

18   look good.  But the people that I was actually

19   protesting for would be able to have their voice

20   heard --

21   Q.      Sir, I'm sorry for cutting you off.  You cut off

22   very badly in your answer.  Could we start that over

23   again?  I'm sorry, sir.

24   A.      So that it would not be a complete -- so that it

25   would not be a whitewash, so that I would not just be

925-831-9029                                          emerickfinch@emerickfinch.com

Page 16

1    A.        A pastor.  A pastor --

2    Q.        As --

3    A.        -- Worship Center.  A pastor at church.

4    Q.        And as a pastor are you there to help them, and

5    to help them receive the benefits and support and

6    services that will help them in aid that they need?

7    A.        Certainly.  And helping them and advocating for

8    them are two different actions in my personal opinion.

9    So I refuse to identify myself as an advocate.  Reverend

10   Al Sharpton is an advocate.  An advocate comes to town

11   sometimes, holds a press conference, gets on the news,

12   and goes home.  I help the people.  I house them.  I

13   feed them.  I work with them.  I am not an advocate.

14   Q.        Do you hold press conferences on behalf of those

15   you serve?

16   A.        No.

17   Q.        Do you live stream interactions and events that

18   you undertake?

19   A.        Live stream?  Certainly.  We live stream church

20   services, we live stream feeding, we live stream

21   housing.  Live stream and press conferences, two

22   different things.

23   Q.        Did you live stream aspects of your protest in

24   front of the major's residence?

25   A.        Most of it was live streamed.  And again, Amy

Page 24

1    Q.      Thank you, sir.  So, sir, going back to the

2    protest, at some point you decide to go to the mayor's

3    residence to protest; is that right?

4    A.      Okay.

5    Q.      And how far in advance of the arrest did you

6    start protesting at the mayor's residence?

7    A.      I would approximate five days.  I think I'm not

8    supposed to guess, but that is as close an estimate as I

9    can make.

10   Q.      Okay.  And during those five days, did you go

11   every day to the mayor's residence to protest?

12   A.      During those days I went every day to the

13   people's house, outside the people's house, normally

14   about 100 yards away, to protest.  I did.

15   Q.      And when you say the people's house, are you

16   referring to the residence that the mayor lives in?

17   A.      Certainly.

18   Q.      I believe it's called the Getty House.  Does

19   that sound correct?

20   A.      Yes.

21   Q.      And we are talking at the same residence or the

22   same building; is that right?

23   A.      I think we are.

24   Q.      Okay.  So during those five days, did you have a

25   set schedule that you would go to the home?  Or did it

925-831-9029                                            emerickfinch@emerickfinch.com

Page 25

1    vary from day to day?

2    A.      I think it varied, because I didn't go alone

3    most days.  Most days I had homeless people with me, and

4    it depended upon what time I picked them up and brought

5    them with me.

6    Q.      Would you go during the daytime?

7    A.      We --

8            (Brief interruption.)

9    BY MR. GILBERT:

10   Q.      Hold on a second, sir.

11   A.      We went during the day and at night.

12   Q.      Did you keep a log or schedule of when you went?

13   A.      Pardon me.

14   Q.      Did you keep a log or a schedule of when you

15   went to the -- to the Getty House?

16   A.      No.  I kept those videos that Amy had the police

17   department to seize.

18   Q.      Did you take -- did you take videos every time

19   you were there protesting?

20   A.      I did.

21   Q.      Now, you mentioned that you think that Amy

22   directed the police to seize that.  When you say Amy,

23   are you referring to Ms. Wakeland?

24   A.      I am.

25   Q.      And why do you believe that Ms. Wakeland

925-831-9029                                    emerickfinch@emerickfinch.com

Page 44

1    up with them and ask them to join you?

2    A.      Sometimes they stopped me and asked to join.

3    Q.      How would that happen?

4    A.      They would stop me and ask me to join me.

5    Q.      So like if you were driving down the street,

6    they would wave you down and ask you if you were going

7    to the mayor's house and if they can join you?

8    A.      No.  If I was on Skid Row, where I was pretty

9    well known at that time, where the protest was talked

10   about, a lot of people would walk up to me and ask me if

11   they could protest near the mayor's residence.  They

12   would like to go.

13   Q.      How long had you been protesting at the mayor's

14   residence at the time that you were approached by people

15   and asked if they could join you?

16   A.      Probably the second day.

17   Q.      And how did the individuals on Skid Row, to the

18   best of your understanding, know that you were

19   protesting in front of the mayor's residence?

20   A.      We had thousands of flyers, sir.  We had flyers

21   put out regarding the protest.

22   Q.      And then beyond the homeless individuals that

23   joined you, was there anyone else that responded to

24   those flyers that came and joined you at the mayor's

25   residence?

Page 45

1    A.       A business lawyer joined me at the -- at the

2    protest for a leg of the protest.  And while the

3    business lawyer was with me, some friend that he brought

4    along with him, a female, joined the protest.  And there

5    were seven or eight mostly Hispanic people in the area

6    who had seen me with signs protesting in front of the

7    homeless who also joined us several times also.

8             Again, that was all on live stream, all on

9    video, all -- apparently your client had the police to

10   seize that material.

11           (Brief interruption.)

12           MR. GILBERT:  Excuse me.  Just --

13           THE WITNESS:  Bless you.

14           MR. GIBLERT:  Thank you.  Sorry.  I tried to

15   mute before.  I think I missed it.

16   BY MR. GIBLERT:

17   Q.       Are you able to tell me how many people were

18   with you on each day of your protest, or whether the

19   frequency of the other individuals changed?  In other

20   words, you were there for five days.  Is it -- did you

21   have someone with you every day, or at least one person

22   with you?

23   A.       Yes.  And I'm approximating five days.  I

24   can't -- I can't tell you exactly the number of days of

25   protest.  I just don't remember.  I'm approximating five

925-831-9029                                        emerickfinch@emerickfinch.com

Page 46

1    days.  And, yes, there was someone with me.

2          The last night of the protest there were some

3    homeless people who slept outside the mayor's residence

4    which -- as you probably know from your client, which is

5    what -- what had frustrated her and decided -- caused

6    her to decide that she had to get rid of me.

7          Because there were tents set up outside in the

8    mayor's residence in the legal area over on the

9    embankment outside the mayor's residence.  And that is

10   when Ms. Wakeland, the next day, went off.

11   Q.    Now, sir, you mentioned earlier that while you

12   were protesting, there was an officer or security detail

13   that came up and had an off-the-record conversation with

14   you.  Do you remember that comment?

15   A.    Off the record and on the record.  And that is

16   not the -- I interacted with officers, Mr. Gilbert, on a

17   number of occasions, including at the beginning of the

18   protest.  The very first thing I did was walk over to

19   the patrol car which sits in front of the mayor's house

20   and indicate to the officer in that car that I was about

21   to start a protest for the homeless.

22          So I have had probably five or six different

23   interactions with both uniformed and un-uniformed

24   officers in and around the mayor's house.  The person

25   who asked me to go off the record, and that is on the

925-831-9029                                    emerickfinch@emerickfinch.com

Page 48

1    such as yours -- we checked you out.  We know your

2    history.  You probably don't want to be protesting in

3    front of the mayor's residence because anything could

4    happen.  Anything could be said.  Any allegation could

5    be made, quote/unquote.

6    Q.        Did this individual offer to try to set up a

7    meeting between you and the mayor?

8    A.        He did.

9    Q.        And you said it didn't work.  What did you mean

10   by that?

11   A.        I didn't -- I didn't quote/unquote sell out.  I

12   was not interested.  I have met with the mayor.  I'm not

13   impressed by the mayor any more than I'm impressed with

14   you.  If you're going to do something -- if you

15   decide -- if you called me and told me you're going to

16   give me 100 lunches that I can feed the hungry with, I'm

17   interested.

18             But just sitting down with Mr. Gilbert, you

19   might be a nice guy.  I'm not interested in meeting you.

20   I'm not impressed by people like that.  I've had people

21   in power -- I've had problems with people in power

22   before, as far as them keeping their word.  So I

23   refused.

24             I -- he a was trying everything he could to get

25   me to simply leave the protest and take these homeless

Page 55

1    Would you like a bottle of water?  He was nice, he was,

2    cordial, he was kind.  One of the officers posted in

3    front of the residence.

4    Q.     Did anyone try to in any way impede or interfere

5    with your right to protest and say what you wanted to

6    say on the first day?

7    A.     The first day, no.  Not that I can recall.

8    Q.     And on the second day I think you mentioned you

9    had a megaphone with you on the second day; that is

10   right?

11   A.     Sure.

12   Q.     Sir, I'm sorry.  I think you froze.

13   A.     Yes, yes.  I did.

14   Q.     And --

15   A.     I have seen thousands of -- I have seen

16   thousands of protestors, often who are more light

17   complected than I am, in front of the mayor's residence

18   who have megaphones, and I have never known them to tell

19   them they couldn't have a megaphone.  But, yes, I had a

20   megaphone, and the Sergeant Wozanouski (phonetic) or

21   someone took it from me.  Yes.

22          And that was not the only incident that day.

23   After he left, one of the security persons inside the

24   mayor's residence came out and harassed me more.

25   Q.     So let's start with the megaphone.  Were you

Page 56

1  using the megaphone during your protest on the second

2  day?

3  A.       Come on, Mr. Gilbert.  I know you've got to ask

4  questions, but that is probably one of the dumbest

5  questions I had.  You think I had it there as a trophy?

6  Yes.  I was using the megaphone, just like the thousands

7  of protestors that I see on the news every day use their

8  megaphone.

9  Q.       Were you using it in the purpose of amplifying

10  your voice?

11  A.       No.  I was using it to silence my voice.  Come

12  on, now.  I can't -- listen, I can't do this.  That is

13  juvenile.  Of course.  Why do you use a microphone or

14  megaphone?  To amplify your voice.  Yes, indeed.

15  Q.       Do you recall what you were saying through the

16  megaphone?

17  A.       Lots of things.  The mayor needs to house the

18  homeless.  The mayor has sold the homeless out.  The

19  mayor has lied to the homeless.  So forth and so on.

20  Q.       And where were you physically located in

21  relation to the residence when you were on the

22  megaphone?

23  A.       Walking up and down the street.

24  Q.       On the sidewalk on the same side of the street?

25  A.       On the sidewalk on the opposite side of the

Page 57

1    street.

2    Q.       And was it directly across the street from the

3    residence?

4    A.       At some points, of course.  I was walking.  I

5    was normally not stabilized or stationary.  I was

6    walking to and fro.  So at some point, yes, I'm going to

7    cross directly in front of the people's house, and I'm

8    going to pass it, and keep going to the end of the

9    street, I'm going to turn around and walk back to the

10   other end of the street.

11   Q.       And the opposite side of the street there's

12   residences as well, aren't there?

13   A.       About 100 yards away from the sidewalk, yes.

14   Q.       And were you walking and pacing in front of

15   those other residences while you were on the megaphone?

16   A.       Yes.

17   Q.       Now, how long did you use the megaphone before

18   you were approached by the first officer?

19   A.       Not very long.

20   Q.       Are we talking minutes or hours?

21   A.       Maybe 30 minutes.

22   Q.       And at that point did the officer who approached

23   you, the first officer, advise you that you were not to

24   use a megaphone?

25   A.       No, no.  The first officer approached me -- a

Page 62

```
 1    the average white person who hears it thinks it is a

 2    yell.  We don't think of it as a yell.  It as an

 3    expression of emotion given to us by -- directly by the

 4    Holy Ghost.  So I can't answer that question.

 5    Q.      Did you ever come to the residence or -- let me

 6    phrase it, were you ever at the mayor's residence at

 7    night when it was dark?

 8    A.      We have already determined -- I have already

 9    told you that we protested during the day and at night.

10    And you might recall earlier that I indicated to you

11    that the night before the arrest, several homeless

12    people camped outside the mayor's residence in tents.

13    And certainly I brought them there to that protest.

14    Q.      Did you ever stay the night at -- in front of

15    the mayor's residence?

16    A.      No.

17    Q.      What is the latest that you would stay there?

18    A.      No clue.

19    Q.      Did you stay into the early morning hours --

20    A.      No.

21    Q.      1:00, 2:00, 3:00 in the morning?

22    A.      No.

23    Q.      Can you give me an estimate of when you were

24    there at night, what hours you would be there?

25    A.      I wouldn't be there for hours, period.  I would
```

925-831-9029                                          emerickfinch@emerickfinch.com

Page 66

1    wouldn't have mattered.  And secondly, I wouldn't have

2    believed them, and on, and on, and on.  So I just don't

3    recall that.

4    Q.      Sir, why wouldn't it have mattered to you if the

5    mayor was not there if you were there to protest to the

6    mayor?

7    A.      Because I was not there to protest to the mayor

8    as a person.  I was there to protest to the mayoral --

9    to the position of mayor.  The mayor if he is there or

10   if he is not there, he is going to hear about it.  You

11   can protest at the White House.  Joe Biden can be in

12   Asia.  If the protest is effective, he will find out

13   about it.

14           You're there not trying -- I mean, if my goal

15   was to see Eric Garcetti, then the first time one of his

16   officers who ended up threatening me came out and said

17   he could set up a meeting with us, I would have had that

18   meeting and left.  So my goal was not to see or have a

19   sit down with Mayor Garcetti.

20   Q.      What was your goal?

21   A.      My goal was to dramatize the issue in order that

22   the mayor would take action, and keep his promises, and

23   stop the slick politician duplicitous Garcetti style of

24   lying and gaming and smooth talking and pretending to

25   give a darn about the people who are sleeping on the

925-831-9029                                    emerickfinch@emerickfinch.com

Page 310

1    record.

2            THE VIDEOGRAPHER:  Okay.  Going off the record.

3    It's 6:26.

4            (The deposition was concluded at 6:26 p.m.)

5

                        _____

6                         SHERMAN MANNING

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

925-831-9029                                    emerickfinch@emerickfinch.com

Page 311

1                    CERTIFICATE OF REPORTER

2

3          I, Christy Curry, CSR No. 13982, a Certified

4    Shorthand Reporter in and for the State of California,

5    do hereby certify:

6          That prior to being examined, the witness named in

7    the foregoing deposition was by me duly sworn to testify

8    to the truth, the whole truth, and nothing but the

9    truth.

10         That said deposition was taken before me at the

11   time and place set forth and was taken down by me in

12   shorthand and thereafter reduced to computerized

13   transcription under my direction and supervision, and I

14   hereby certify the foregoing deposition is a full, true

15   and correct transcript of my shorthand notes so taken.

16         And I further certify that I am neither counsel for

17   nor related to any party to said action nor in any way

18   interested in the outcome thereof.

19         IN WITNESS WHEREOF, I have hereunto subscribed my

20   name this 12th day of October, 2022.

21

22

23   _____

                CHRISTY CURRY
24              CSR No. 13982

25

Page 312

```
 1                        Date_____

 2   Check One

 3

 4            _____       Signature waived on the record.

 5

 6            _____       I certify that the witness

 7                              was given the statutory

 8                              allowable time within which

 9                              to read and sign the

10                              deposition, and the witness

11                              failed to appear for such

12                              reading and signing.

13

14            _____       I certify that the witness has

15                              read and signed the deposition

16                              and has made any changes

17                              indicated therein.

18

19

20   BY_____

21             EMERICK AND FINCH

22

23

24

25
```

925-831-9029                                    emerickfinch@emerickfinch.com

Page 314

```
 1                      EMERICK AND FINCH
                    Certified Shorthand Reporters
 2                  18 Crow Canyon Court, Suite 125
                     San Ramon, California 94583
 3                        (925) 831-9029

 4   Date:    October 13, 2022


 5

     SHERMAN MANNING
 6   c/o Christian Contreras, Esquire
     West Beverly Boulevard
 7   Montebello, California 90640

 8   Re:  SHERMAN MANNING, an individual v. AMY WAKELAND, an
     individual, Sergeant SMITH, an individual, CITY OF LOS
 9   ANGELES; and DOES 1 through 10, inclusive

10   Dear SHERMAN MANNING:

11        Your deposition in the above matter is now
     available at this office.  You may wish to discuss with
12   your attorney whether he or she requires that it be
     read, corrected, if necessary, and signed before it is
13   filed with the court, if so ordered.  Your rights
     regarding signature of this deposition are contained in
14   the Code of Civil Procedure.

15        Since the original deposition may not be released
     from our custody, if you wish to sign it, please appear
16   at this office, 18 Crow Canyon Court, Suite 125, San
     Ramon, California, within the next 30 days on any
17   weekday between the hours of 9:00 a.m. and 4:00 p.m.  It
     is necessary that you bring this letter with you.
18
          In the alternative, you may wish to read your
19   attorney's copy of the deposition and notify this office
     by letter of any changes that you desire to be made.
20
                         Very truly yours,
21                       EMERICK AND FINCH

22

23   CHRISTY CURRY, CSR NO. 13982

24
     cc:  All Counsel
25        Original
```

# EXHIBIT B

Deposition Transcript

Case Number: 2:21-cv-08358-FMO-KS

Date: September 9, 2022

In the matter of:

# MANNING v WAKELAND, et al.

## AMY WAKELAND



**CERTIFIED COPY**

Reported by:
Caryn Kellner
CSR No. 30XI100213000

Steno
Official Reporters

315 W 9th St.
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: FIRM #108F

```
 1                UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
 2
                  CASE NO.: 2:21-cv-08358-FMO-KS
 3
      - - - - - - - - - - - - - - - - - -
 4    SHERMAN MANNING,

 5                  Plaintiff,              VIRTUAL - ZOOM
                                               VIDEOTAPE
 6          vs.                            DEPOSITION OF:
                                             AMY WAKELAND
 7    AMY WAKELAND, an individual,
      SERGEANT SMITH, an individual,
 8    CITY OF LOS ANGELES; and DOES
      1 through 10, inclusive,
 9
                    Defendants.
10    - - - - - - - - - - - - - - - - - -

11

12               TRANSCRIPT of the stenographic notes of

13    the proceedings in the above-entitled matter, as

14    taken by and before CARYN KELLNER, a Certified Court

15    Stenographer of the State of New Jersey, held via the

16    Zoom platform on Friday, September 9, 2022,

17    commencing at 1:06 p.m.  Pacific Time.

18

19

20

21

22

23

24

25
```

```
 1   A P P E A R A N C E S:

 2   GUIZAR, HENDERSON & CARRAZCO, LLP
           3500 West Beverly Road
 3         Montebello, California 90640
           (323) 725-1151
 4   BY:  HUMBERTO GUIZAR, ESQ.
           hguizar@ghclegal.com
 5         CHRISTIAN CONTRERAS, ESQ.
           ccontreras@ghclegal.com
 6   Attorneys for Plaintiff

 7   COLE HUBER, LLP
           2281 Lava Ridge Court
 8         Suite 300
           Roseville, California 95661
 9         (916) 780-9009
     BY:  RONALD J. SCHOLAR, ESQ.
10         norcalifo@colehuber.com
     Attorneys for Defendant,
11   City of Los Angeles

12   EVERETT DOREY, LLP
           18300 VOn Karman Avenue
13         Suite 900
           Irvine, California 92612
14         (949) 771-9233
     BY:  CHRISTOPHER LEE, ESQ.
15         clee@everettdorey.com
           MONSERRAT REYES, ESQ.
16         mreyes@everettdorey.com
     Attorneys for Defendant,
17   Sergeant Smith

18   ORBACH, HUFF & HENDERSON, LLP
           1901 Avenue of the Stars
19         Suite 575
           Los Angeles, California 90057
20         (310) 788-9200
     BY:  KEVIN GILBERT, ESQ.
21         kgilbert@ohhlegal.com
     Attorneys for Defendant,
22   Amy Wakeland

23
     ALSO PRESENT:
24   Alan Hernandez, Videographer
     Sherman Manning, via phone

25
```

```
 1                              INDEX

 2    WITNESS            DIRECT    CROSS    REDIRECT    RECROSS

 3    Amy Wakeland

 4    By Mr. Guizar        6

 5

 6

 7

 8

 9

10                            EXHIBITS

11
      NUMBER           DESCRIPTION                    PAGE
12

13

14              (No exhibits were marked.)

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    LITIGATION SUPPORT PAGE

2

3            DIRECTION TO WITNESS NOT TO ANSWER

4       Page           Line          Page           Line

5        37             25            48             09

6        49

7

8    REQUEST FOR PRODUCTION OF DOCUMENTS/INFORMATION

9       Page           Line          Page           Line

10                      (NONE)

11

12          QUESTIONS MARKED FOR A RULING

13      Page           Line          Page           Line

14                      (NONE)

15

16         PAGES MARKED PER COUNSEL'S REQUEST

17      Page           Line          Page           Line

18

19                      (NONE)

20

21

22

23

24

25
```

1  think you're understanding my questions.  My question

2  is very specific; all right?  Did you ever file any

3  kind of police report to anyone prior to the time

4  that Mr. Manning was arrested?

5           MR. SCHOLAR:  Objection, vague and

6  ambiguous as to "file."

7           MR. GILBERT:  Vague as to "police

8  report" as well.

9           Go ahead.

10     A.    I'm also having trouble with this notion

11  of Mr. Manning's arrest.  I don't have knowledge of

12  whether or not he was actually arrested.  But

13  speaking to issue, I did not file a police report, I

14  reported to the police other incidents.

15     Q.    Okay.  When was the first time -- first

16  time that Mr. Manning allegedly stalked somebody in

17  your family?

18           MR. GILBERT:  Calls for a legal

19  conclusion, assumes facts.

20           Go ahead.

21     A.    So the first time Mr. Manning was

22  noticed by me as someone of concern, although he had

23  already been at the house other times, the first time

24  he was a person of concern for me and my daughter was

25  when he came to the house in the middle of the night

AMY WAKELAND
SEPTEMBER 09, 2022

JOB NO. 364837

```
 1   after previously asking -- being asked to leave the
 2   house.
 3            The police were outside.  I did not call
 4   the police, so I assume there was a neighborhood
 5   complaint to Olympic about him being outside the
 6   house hollering, I don't know what, but it woke up my
 7   daughter who, obviously, was very upset and scared.
 8            That was the first incident where I
 9   noticed him as having an impact that was annoying and
10   threatening and scary for us because she spent that
11   night crying and unable to speak.
12       Q.    Where was Mr. Manning located when you
13   heard him verbalizing, as you just described?
14       A.    Right outside her window.
15       Q.    Outside the window of the property --
16            MR. GILBERT:  Vague.
17       Q.    -- of the house?
18            MR. GILBERT:  Go ahead.
19       A.    The window of her bedroom.
20       Q.    Okay.  Do you know if he knew she was
21   there?
22       A.    I can't imagine --
23            MR. GILBERT:  Objection.
24            Go ahead.
25       A.    I can't imagine someone who had been at
```

AMY WAKELAND
SEPTEMBER 09, 2022                                      JOB NO. 364837

 1          A.    It's --

 2                MR. GUIZAR:  So if you want to instruct

 3   her not to answer on whether or not her husband

 4   communicated with her about what was going on outside

 5   -- is that what you're telling me?

 6                MR. GILBERT:  Miss Manning -- or Miss

 7   Wakeland, I'm sorry, you wanted to say something?

 8                THE WITNESS:  Excuse me, sir, there was

 9   no need.  I'm telling you, the police were already

10   there.  There was no need to get involved.  The

11   police were already there.  I'm telling you, somebody

12   in the neighborhood must have called the police

13   because the police were already there.

14          Q.    Did you tell your husband, Don't get

15   involved?

16                MR. GILBERT:  Objection, calls for

17   spousal communications.  She will not answer that

18   question.

19          Q.    Okay.  So that was -- that was the first

20   time; right?

21          A.    That was not the first time Mr. Manning

22   was at our house, at the Getty House, it was the

23   first time his behaviors seemed concerning and

24   irrational and contrary to the law and common

25   decency.

AMY WAKELAND
SEPTEMBER 09, 2022

JOB NO. 364837

1      Q.      Okay.  What was it that he was saying?

2      A.      I have no idea what she was saying.  He

3   would -- he would -- he would yell.  He would mumble

4   very quietly into his phone at times.  He would sing.

5   He would chant.

6            His demeanor was -- would change through

7   all these incidents from sort of being very quietly

8   talking into his phone and yell -- then yelling at

9   the house.  And sometimes he was on megaphone and

10  sometimes he was singing.

11     Q.      But you never knew what his message was

12  about, what his message -- why he was going there, to

13  go to your property, why he was protesting?

14     A.      Well, I was told that he had been

15  bringing people to the house and telling members of

16  detail and other police officers from Olympic that

17  they were homeless people who had Covid.

18     Q.      So he was advocating for the homeless

19  community during Covid; right?

20            MR. GILBERT:  Misstates testimony.

21            Go ahead.

22     A.      I don't know what he was doing.  I don't

23  consider bringing people who are potentially infected

24  with Covid to somebody's home to be an advocacy for

25  the homeless.

AMY WAKELAND                                          JOB NO. 364837
SEPTEMBER 09, 2022

1      A.      -- on the gate?

2      Q.      Did he ever bang at the gate of your

3  property, bang on it with a metal iron or -- or a

4  baseball bat or anything like that?

5      A.      He sent someone to doorbell harass us

6  after the restraining order was instituted so that he

7  was violating the spirit of the restraining order

8  without technically legally violating it.  And this

9  person, while harassing us, made sure to let us know

10 that Mr. Manning had -- was around the corner and had

11 sent him to do this.

12     Q.      How do you know that he sent him to do

13 that?

14     A.      He told us that.  He came to the

15 doorbell doorbell harassing, ning, ning, ning, ning,

16 ning, ning, ning, ning on the doorbell to make us

17 aware of the fact that Mr. Manning was sitting just a

18 hundred feet outside the zone post the restraining

19 order.

20          Prior to the restraining order there

21 were three incidents -- or four incidents of him not

22 banging on the gate, but two of him filming my

23 daughter through the gate, one of him trying to

24 engage her when she was out there on her own, and

25 another where he surprised me in the middle of the

AMY WAKELAND                                                    JOB NO. 364837
SEPTEMBER 09, 2022

```
 1   night as I was already opening the gate so I couldn't
 2   do anything to make sure the gate was closed.  And I
 3   was fearful he would follow me in.
 4             He turned his camera on me, which is how
 5   I knew he was there.  I hadn't seen him until he was
 6   up on the car and turned to face me with the bright
 7   light of the camera shining in the passenger side of
 8   the vehicle.  But I had already opened the car gate
 9   and couldn't do anything about it and I was
10   terrified.
11        Q.    When was that?  When did that happen?
12        A.    That would have been prior to the
13   restraining order.
14        Q.    And did you file -- did you call the
15   police that day when that happened?
16        A.    I told Shauna Green at the time, who was
17   the sergeant at the time in charge of detail about
18   the incident the next morning.
19        Q.    And did you file -- did you -- did you
20   go file a complaint with the police department --
21             MR. GILBERT:  Vague as to "file a
22   complaint."
23        Q.    -- for that incident?
24             MR. GILBERT:  Go ahead.
25             Vague.
```

AMY WAKELAND
SEPTEMBER 09, 2022

JOB NO. 364837

1    near you when you were coming home?

2         A.      Did anyone from LAPD tell me that he was

3    committing a crime?  I didn't ask that question of

4    them.  I -- I report incidents to them.

5         Q.      Well --

6         A.      I rely on them to make decisions about

7    how they will handle them and I trust how they will

8    handle them.

9         Q.      Now, you said there was another incident

10   where he was videotaping your daughter?

11        A.      Two.

12        Q.      Two incidents where he was videotaping

13   your daughter?

14        A.      Yes.

15        Q.      And when --

16        A.      And --

17        Q.      -- did those happen?

18        A.      Prior to the restraining order.

19        Q.      Okay.  And how do you know he was

20   videotaping your daughter?

21        A.      Well, in the first incident I wasn't

22   present for it.  The nanny/baby-sitter was with my

23   daughter getting into the car.  Mr. Manning came up

24   to the pedestrian gate and held the phone up to the

25   pedestrian gate where there's a gap in the gate that

AMY WAKELAND
SEPTEMBER 09, 2022                                              JOB NO. 364837

```
 1   you can film through and filmed them and the

 2   baby-sitter reported that to me.

 3        Q.      How do you know that was filming?

 4        A.      Because she told me he was filing them.

 5        Q.      Did she see the video?

 6        A.      She didn't see a video, she saw the

 7   camera filming them.

 8        Q.      Have you ever seen a video of your

 9   daughter before recorded like you said?

10        A.      Mr. Manning would have that video.

11        Q.      I'm not asking you -- I'm not asking you

12   that.  Please answer my question.  It's very simple.

13   Did you ever see a video of your daughter filmed

14   anywhere on social media, on a picture in the news

15   that was taken by Mr. Manning?  It's a --

16        A.      I have --

17        Q.      -- very simple question; "yes" or "no"?

18        A.      I have not seen --

19        Q.      Okay.

20        A.      -- a video that he filmed of my

21   daughter.

22        Q.      Okay.  Any other -- have you ever seen

23   any video of Mr. Manning videotaping you -- anybody

24   other than yourself at the property?

25               MR. GILBERT:  And "the property," you
```

```
 1                MR. GILBERT:  -- vague.
 2           Go ahead.
 3      A.        I did not have anyone arrested and I
 4   don't even know if he was arrested.
 5      Q.        You didn't tell Sergeant Smith to arrest
 6   him for felony stalking?
 7      A.        Absolutely not.  I wouldn't even know
 8   how to come up with "felony stalking."  I told the
 9   officers that were on site the facts of the case
10   leading up to the day that many police off -- cars
11   ended up here.
12      Q.        The day of the incident when my client
13   was arrested, I believe there's video of you coming
14   out to the front of your property, coming outside,
15   not staying inside, but coming outside, okay, and
16   making some statements towards Mr. -- Mr. Manning.
17   Do you recall that?
18      A.        I recall going outside my property, but
19   talking to Mr. Manning was not the -- my initial
20   intent.  Mr. Manning engaged me first.  My intent was
21   to engage the homeless man that was with him who I
22   believed was either on drugs or severely mentally ill
23   because he was wandering around very confused about
24   all the police cars that were there, scratching his
25   head (indicating).  And I asked him if I could get
```

AMY WAKELAND
SEPTEMBER 09, 2022

JOB NO. 364837

1    him outreach services, that -- that I could call

2    somebody and see if an outreach worker could come

3    help him.

4        Q.    Did you not scream at Mr. Manning that

5    he was a convicted felon, a child molester right

6    there --

7        A.    I told --

8            MR. GILBERT:  Vague as to "scream."

9        Q.    -- publically?  Did you not scream at

10    him?

11            MR. GILBERT:  Vague as to "scream."

12            Go ahead.

13        A.    I told the man that was with him that he

14    was keeping the company of a convicted sexual

15    offender, yes.  And that's when Manning turned the

16    camera on me and admitted that he was an offender and

17    said that, You, Amy, you know, of any people should

18    know about reformation because you sit on the board.

19    And he mentioned an organization that I sit on --

20    that I used to sit on the board of.

21            It made me very nervous that he knew

22    these personal details about me, especially after

23    there had been a previous incident of him standing

24    outside my window screaming, "Amy for president."  I

25    also then realized that, you know, this was someone

AMY WAKELAND
SEPTEMBER 09, 2022

JOB NO. 364837

1    who knows that -- he's got this history, he believes

2    he's reformed and yet he's still coming to my house,

3    even though he's already been told by multiple people

4    that he's scaring us.  And I knew then that he, for

5    sure, was not a reformed criminal.

6        Q.    How did you know he was not a reformed

7    criminal?

8        A.    Because a reformed sexual offender does

9    not harass other people.  They don't harass small

10   children.  They don't -- they don't continue to come

11   back to the house after other religious figures have

12   told them that they can -- they can get a meeting

13   with the mayor, the mayor's staff on Zoom, that

14   they'll talk to them about their priorities.

15            Mr. Manning was interested -- he was

16   offered -- he was offered meetings with the mayor's

17   staff to talk about the issues he ostensibly claims

18   to care about.  In reality he cared about coming to

19   this house and scaring my daughter and me.

20       Q.    How do you know that was his intent?

21       A.    Again, it is my view that a reformed

22   sexual offender does not continue to come to

23   someone's house when they have been told by other

24   religious figures that they are scaring a family.

25       Q.    So that is your opinion, that --

1    people are dying without medical care.

2                 And that's why the City of Los Angeles

3    was sued for that.  So it's not like the mayor and

4    yourself cared about the homeless because you weren't

5    doing anything for them.  That's why he was going

6    there, to bring -- bring it to light.  Are you open

7    to that proposition or not?

8                 MR. GILBERT:  Compound, misstates facts,

9    argumentative, vague, overbroad.

10         Q.    You're not going to answer the question

11   because you have your own narrative, so let's see the

12   specifics about what you did here.

13                 So we covered the first incident, that

14   you claimed he was screaming in your -- well, you

15   assumed he knew your daughter was there, you don't

16   know for a fact, but you assumed he was there and he

17   was screaming at -- at the window where your daughter

18   was.  That was -- I believe that was the first

19   incident where he had contact and you thought that

20   was a form of stalking; is that correct?

21         A.    I am not a lawyer to know what the

22   components of stalking are.  I'm a mom and that is

23   the first time -- yes, that's the first incident that

24   -- where I became concerned about his behavior.  He

25   had been earlier asked to leave after one of these

AMY WAKELAND
SEPTEMBER 09, 2022

JOB NO. 364837

1   incidents where, you know, he brought somebody over

2   who ostensibly had Covid and he came back in the

3   middle of the night.

4              And I viewed somebody who is engaged in

5   that kind of behavior to be -- to be scary, so I was

6   alarmed.  That was the first time it happened.  It,

7   obviously, had terrible impacts on my daughter who

8   cried and had difficulty sleeping and from that point

9   on, had a very difficult time using her own bedroom.

10       Q.     Okay.  Any -- what was -- any other

11   incidents like that?

12       A.     There was that incident.  There was the

13   incident filming the baby-sitter and my daughter

14   through the gate.  There was the incident where he

15   filmed my daughter and me coming home from swimming

16   when my daughter was in her swimsuit.

17              There was the incident where my daughter

18   came out onto the front porch on her own prior to

19   dinner, was eating cantaloupe and cucumbers and

20   whatnot while the baby-sitter and I were preparing

21   dinner.  And he approached her and tried to engage

22   her in conversation and she came in to report it.

23              That was the first time -- my daughter

24   was eight at the time.  That was the first time I had

25   to have a discussion with her about the seriousness

AMY WAKELAND
SEPTEMBER 09, 2022

JOB NO. 364837

```
 1   of adults trying to befriend children when they're on
 2   their own, even if a gate separates them.  I should
 3   tell you, I can jump over that gate.  That gate is
 4   not any miracle worker in terms of somebody who, you
 5   know, might have elicit plans.
 6              There was the incident where he screamed
 7   at the window, "Amy for president."  That was, like,
 8   45 minutes long of him just -- just screaming, "Amy
 9   for president."  It went on for -- it seemed
10   irrational and disturbing.  There was the incident
11   when I came up to the car gate and he turned the --
12   in the dark and I'd already opened the car gate and
13   he turned the flashlight -- the light from the phone
14   on me, presumably filming.
15        Q.    Are those the incidents -- are those the
16   incidents you're refer -- are those all the
17   incidents?
18        A.    Those are the incidents before the
19   restraining order.
20        Q.    All right.  But before the --
21        A.    But there were incidents after the
22   restraining order.
23        Q.    Yeah, we'll -- we'll get to that.  But I
24   want to know how the incidents happened before the
25   arrest.  So I think you mentioned the one he hung
```

AMY WAKELAND
SEPTEMBER 09, 2022

JOB NO. 364837

```
 1   outside the window, the one where you -- your -- your
 2   -- your nanny was out there with your daughter and
 3   you believe -- you weren't there, but you believe he
 4   was videotaping, you never saw the video.  That's the
 5   second incident that I'm aware of.
 6              You said there was a third incident
 7   where she came home with her swimsuit and you were
 8   with her and he was out there; right?  When did that
 9   happen?
10        A.     After the one with the baby-sitter and
11   before the incident where he engaged her while she
12   was sitting on the front porch.
13        Q.     How many days before that?
14        A.     It would only have been one or two.
15        Q.     One or two days?
16        A.     Yes.  It would have been -- these
17   incidents would have been sort of one day, the next
18   day, the next day.  Maybe there was a day in between
19   two of them.  But it was dail -- it was almost daily.
20   Maybe there was one day he wasn't here.  I can't tell
21   you exactly.  But I do know the order in which these
22   incidents happened because my concerns about him just
23   snowballed.
24              And the incident where he engaged her on
25   the front porch and she came in to talk to me about
```

AMY WAKELAND
SEPTEMBER 09, 2022

JOB NO. 364837

1    it caused me, after she went to bed, to look him up

2    on Megan's Law.  And that's when I realized that this

3    was not -- this was not just somebody harassing us,

4    this was -- this was a sexual -- a convicted sexual

5    offender who was a real danger to us.

6        Q.    Did you also look to see if he had

7    become a minister and he was out there saving

8    people's souls?  Did you check that out?

9              MR. GILBERT:  Assumes facts, vague.

10             Go ahead.

11       A.    I don't know anything about whether or

12   not he really is a pastor.

13       Q.    Okay.  That's good.  You didn't check.

14   You didn't check to find out about his good works and

15   what he's done.

16             Did you ever -- did you ever -- am I

17   correct you never checked?

18             MR. GILBERT:  Compound, vague, assumes

19   facts.

20             Go ahead.

21       A.    I'm not interested in learning more

22   about somebody who is --

23       Q.    I'm asking not asking you --

24             MR. GUIZAR:  Move to strike as

25   nonresponsive.

AMY WAKELAND
SEPTEMBER 09, 2022

JOB NO. 364837

```
1    you did not receive from an attorney.
2         Q.    Yeah, that's before -- at the time of
3    the incident, before there were attorneys involved,
4    when you first -- at the time he was arrested, did
5    you figure that out?  Did you already know what his
6    convictions were?
7              MR. GILBERT:  Compound.
8              Go ahead.
9         A.    So I would not describe myself as
10   someone who was "hung up" on his prior conviction.  I
11   would describe myself as someone who was scared both
12   because of his prior conviction but because I learned
13   about his prior conviction after a series of
14   incidents at this house that scared me enough to
15   cause me to look him up on Megan's Law website.
16        Q.    Okay.  And what -- what did you find out
17   on Megan's Law about his convictions?  What were the
18   convictions?
19        A.    I -- well, first of all, that Megan's
20   Law website offers a code in terms of the convictions
21   that you have to then go look up elsewhere.  And I
22   learned that he had been convicted of forced sodomy
23   and oral copulation with a minor under age 14.
24        Q.    And was that a male or a female?
25        A.    The code doesn't state male or female,
```

AMY WAKELAND
SEPTEMBER 09, 2022

JOB NO. 364837

1    and neither does the entry on Megan's Law.

2        Q.    You're a woman and your daughter's a

3    woman; right, obviously?

4        A.    Yes, but I -- but I -- I would have

5    gained no -- I know no information about who his

6    victim is or the gender of his victim because if you

7    go to Megan's Law you will see that they do not

8    describe the victim.  They refer you to the code that

9    you can then look up.  And I looked up the code and,

10   obviously, the code says, minor under the age of 14.

11       Q.    If -- if you were more thorough in your

12   research maybe you might have found out that Mr.

13   Manning at that time was about 20 years old and that

14   his victim was a boy, a man, not a girl.

15           Whatever he did, you're calling him a

16   predator and saying that he's going to be out there

17   looking for young girls and women.  What if you had

18   all those facts -- if you knew about those facts?

19           MR. GILBERT:  Speculation, misstates

20   facts, argumentative.

21           Go ahead.

22           MR. GUIZAR:  I'm not misstating facts.

23   Those are the real facts.

24       A.    That makes absolutely no difference to

25   me because Mr. Manning's constant --

```
 1    that he was -- and to tell him that he was scaring my

 2    daughter and me.

 3              My understanding is that he rebuffed the

 4    opportunity to meet with the mayor or anyone on the

 5    mayor's staff.  But I know from those conversations

 6    that he was informed that he was scaring us and that

 7    in fact the mayor was not home, that he worked from

 8    city hall.

 9              And at that point in time, you will

10    recall, during Covid they had these -- there were

11    those nightly briefings that would come on at, like,

12    5:30 or 6:00, so he was down there until those

13    briefings were over.

14        Q.    Anything else you want to volunteer that

15    I didn't ask you about?

16              MR. GILBERT:  Argumentative.

17        Q.    You want to talk, let's talk.  Anything

18    else?  You like to give us the story so, please, if

19    you -- feel free to tell me more.

20              MR. GILBERT:  Counsel, please don't be

21    argumentative.  You asked a question about --

22              MR. GUIZAR:  I'm not being --

23              MR. GILBERT:  You asked a question about

24    the incidents, she told you about the incidents.

25              MR. GUIZAR:  Mr. Gilbert, how am I being
```

AMY WAKELAND
SEPTEMBER 09, 2022                                                JOB NO. 364837

```
 1   tried to limit whatever your thought process is.  But
 2   I'm just focusing on what happened the day he was
 3   arrested; okay?  It was April 28th of 2020, at the
 4   time of Covid; okay?  And is it your testimony that
 5   you did not ask Sergeant Smith to have him arrested?
 6        A.     Yes, it's absolutely my testimony that I
 7   did not do that.  I didn't even hear what you said
 8   the sergeant's name was, sergeant --
 9        Q.     Smith.
10        A.     Sergeant Smith.
11        Q.     You didn't see him getting arrested and
12   he was taken away, even though you were just outside
13   yelling at him a few minutes before; right?
14               MR. GILBERT:  Assumes facts.  Assumes
15   facts.
16               Go ahead.
17        A.     I left.
18        Q.     Where did you go?
19        A.     Into the house.
20        Q.     Did you engage in a plan with the LAPD
21   and other people and the city attorney's office to
22   figure out a way to have Mr. Manning arrested?
23        A.     No.
24               MR. GILBERT:  Vague as to "plan."
25               Go ahead.
```

```
 1        A.      No.

 2        Q.      Did he ever do them to anybody in your

 3   family?

 4        A.      No.

 5                MR. GILBERT:   Speculation.

 6        A.      He was attempting to befriend my

 7   daughter, not calling her names.

 8        Q.      So how do you know that?  Do you know

 9   how to read his -- do you -- are you -- do you have

10   the ability to read someone's mind?

11        A.      He said to her, Hi, how are you?  You

12   look lonely.  Are you lonely?

13                That's attempting to befriend someone.

14   She was on her own.

15        Q.      Okay.  Where did this happen at?  Where

16   did this happen?

17        A.      When she was out on the porch eating --

18   I'm sorry, I didn't hear you.

19        Q.      Where did this happen at?

20        A.      On the front porch of Getty House.

21        Q.      Was -- was that conversation recorded?

22        A.      No, it was reported to me by my

23   daughter.  Mr. Manning could have recorded it,

24   though, because he recorded almost everything over

25   here.  It was part of his approach.
```

```
 1        IN WITNESS WHEREOF, I have this date subscribed

 2                     my name.   Caryn Kellner

 3   DATED: September 29, 2022   _____
                                 Caryn Kellner, CSR #2130
 4

 5

                        CHANGES AND SIGNATURE
 6
     WITNESS NAME:                  DATE:
 7
     PAGE/LINE          CHANGE/REASON
 8

 9   _____         _____

10   _____         _____

11   _____         _____

12   _____         _____

13   _____         _____

14   _____         _____

15   _____         _____

16   _____         _____

17   _____         _____

18   _____         _____

19   _____         _____

20   _____         _____

21

22   Executed this_____ day of _____,_____.

23

24                      _____

25                          (Witness name.)
```

AMY WAKELAND                                                    JOB NO. 364837
SEPTEMBER 09, 2022

```
 1                   C E R T I F I C A T E

 2
                I, CARYN KELLNER, a Certified Court
 3   Stenographer of the State of New Jersey, do hereby
     certify that prior to the commencement of the
 4   examination, the witness was duly sworn by me to
     testify to the truth, the whole truth, and nothing
 5   but the truth.

 6                I DO FURTHER CERTIFY that the foregoing
     is a true and accurate transcript of the testimony as
 7   taken stenographically by and before me at the time,
     place and on the date hereinbefore set forth, to the
 8   best of my ability.

 9                I DO FURTHER CERTIFY that I am neither a
     relative nor employee nor attorney nor counsel of any
10   of the parties to this action, and that I am neither
     a relative nor employee of such attorney or counsel,
11   and that I am not financially interested in the
     action.

12                    Caryn Kellner

13

14        CARYN KELLNER, CSR NO. 30XI100213000

15
     (The foregoing certification of this transcript does
16   not apply to any reproduction of the same by any
     means, unless under the direct control and/or
17   supervision of the certifying stenographer.)

18

19

20

21

22

23

24

25
```

# EXHIBIT C

**EXHIBIT C** to the Declaration of Kevin Gilbert: A true and correct copy of the live-stream video taken by Plaintiff on April 28, 2020, and produced by counsel in this matter

Please click on image below for video:



# EXHIBIT D

1  Humberto M. Guizar, Esq., (SBN 125769)
       hguizar@ghclegal.com
2  Christian Contreras, Esq., (SBN 330269)
       ccontreras@ghclegal.com
3  **THE LAW OFFICES OF HUMBERTO GUIZAR**
   **A PROFESSIONAL CORPORATION**
4  Justice X Building
   3500 W. Beverly Blvd.,
5  Montebello, California 90640
   Telephone: (323) 725-1151
6  Facsimile: (323) 597-0101

7  Attorneys for Plaintiff,
   SHERMAN MANNING
8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12  SHERMAN MANNING, an individual,      ) **Case No.: 2:21-cv-08358-FMO-KS**
                                          ) ***[Hon. Fernando M. Olguin]***
13             Plaintiff,                 )
                                          ) **FIRST AMENDED COMPLAINT**
14       v.                               ) **FOR DAMAGES**
                                          )
15  AMY WAKELAND, an individual,          ) 1. 42 U.S.C. § 1983 – FIRST and
16  Sergeant SMITH, an individual, CITY OF )    FOURTH AMENDMENT
    LOS ANGELES; and DOES 1 through 10,   )    VIOLATIONS
17  inclusive,                            ) 2. MALICIOUS PROSECUTION
                                          ) 3. FALSE ARREST AND FALSE
18             Defendants.                )    IMPRISONMENT
                                          )
19                                        ) **DEMAND FOR JURY TRIAL**
                                          )
20

21

22

23

24

25

26

27

28

                                1

# **COMPLAINT FOR DAMAGES**

Plaintiff, by and through his attorneys, the LAW OFFICES OF HUMBERTO GUIZAR APC, for his Complaint against Defendants, states the following:

## **INTRODUCTION**

This case arises out of an incident in which Plaintiff, SHERMAN MANNING ("MANNING" or "PLAINTIFF"), was wrongfully arrested, wrongfully detained and incarcerated, and was subjected to false criminal charges, but his ordeal resulted in a full dismissal of the criminal charges.

## **JURISDICTION AND VENUE**

1. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because this case is being brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States that are secured by the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988. This action is brought pursuant to the Fourth Amendment to the United States Constitution, as well as the laws and Constitution of the State of California. This action is brought pursuant to the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of California.

2. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law.

3. Venue is proper, pursuant to 28 U.S.C. § 1391(e)(2), because the events giving rise to PLAINTIFF's claims occurred in this judicial district.

## **PARTIES**

4. PLAINTIFF is a citizen of the United States, a competent adult, and a resident of the State of California.

5. Defendant CITY OF LOS ANGELES ("CITY") is a municipal corporation, duly organized and existing under the laws of the State of California, and is the employer of the individual defendants named above, including City of Los Angeles

1    Police Sergeant SMITH, as well as at least some of the to-be-identified DOE
2    Defendants. Under its authority, the CITY operates the City of Los Angeles Police
3    Department ("LAPD").

4        6. Defendant  Sergeant SMITH and  Does 1-10,  at all material times, were
5    employed by the CITY as Police Officers for the LAPD, were acting within the
6    course and scope of that employment, and were acting under color of state law.
7    Defendants Sergeant SMITH and  Does 1-10, are sued in their individual capacities.

8        7.  Defendant AMY WAKELAND is a private citizen and the wife of ERIC
9    GARCETTI, the Mayor for the City of Los Angeles.  She had exclusive control of
10   the Getty House, also known as the Mayor's Mansion.  AMY WAKELAND is sued
11   in her individual capacity and as the Mayor's wife.

12       8. The true names or capacities, whether individual, corporate, associate, or
13   otherwise of Defendants named herein as DOES 1 through 10 are unknown to
14   PLAINTIFF, who, therefore, sues said Defendants by said fictitious names.
15   PLAINTIFF will amend this Complaint to show said Defendants' true names and
16   capacities when the same have been ascertained. PLAINTIFF is informed, believes,
17   and thereon alleges that all Defendants sued herein as DOES are in some manner
18   responsible for the acts, omissions, and injuries alleged herein.

19       9. PLAINTIFF alleges, on information and belief, that each of the Defendants
20   sued herein was wrongfully, negligently, and/or otherwise responsible in some
21   manner for the events and happenings as hereinafter described, and proximately
22   caused injuries and damages to PLAINTIFF. Further, one or more DOE Defendants
23   was at all material times responsible for the hiring, training, supervision, and
24   discipline of other Defendants, including both the individually named and DOE
25   Defendants.

26       10. PLAINTIFF is informed, believes, and thereon alleges that each of the
27   Defendants was, at all material times, an agent, servant, employee, partner, joint
28   venturer, coconspirator, and/or alter ego of the remaining Defendants, and in doing

**COMPLAINT FOR DAMAGES**

the things hereinafter alleged, was acting within the course and scope of that relationship.

11. PLAINTIFF is further informed, believes, and thereon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may hereinafter be otherwise, specifically alleged.

12. At all material times, each Defendant was jointly engaged and integrally involved in constitutionally violative, unlawful, and/or tortious activity, resulting in the deprivation of PLAINTIFF's constitutional rights and other actionable harm.

13. The acts and omissions of all Defendants,1 as set forth herein, were at all material times pursuant to the actual customs, policies, practices, and/or procedures of the LAPD or, alternatively, such acts and omissions were pursuant to the lack thereof and, thus, were in lieu of policies, practices, and procedures that should have been in place.

14. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

15. The incident that gave rise to Plaintiff's claims occurred on April 28, 2021. Plaintiff, in propria persona, timely and properly presented on behalf of himself a California Government Code section 910 claim to the City of Los Angeles, on October 27, 2020. That claim was rejected by operation of law.  Plaintiff thereafter filed a Complaint, again in propria persona. It was also  timely filed within all applicable statutes of limitation.

16. This complaint may be pleaded in the alternative, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

17. PLAINTIFF re-alleges each previous paragraph in this complaint, as though fully set forth here.

///

**COMPLAINT FOR DAMAGES**

18. On or about April 28, 2021, Plaintiff was asserting his First Amendment rights to free speech and assembly when he was protesting at the Mayor's Mansion, also known as The Getty House. The Getty House is the official residence of the mayor of Los Angeles, California. It is located at 605 South Irving Boulevard in Windsor Square, a historic district east of Hancock Park, about five miles west of the Los Angeles City Hall. The house became the official residence for the mayor of Los Angeles.  The house is a public place, used by every Mayor who is elected to serve as Mayor for City of Los Angeles.  Acting as advocate for the homeless people of Los Angeles, Plaintiff was protesting the documented failure of the City to provide housing and assistance to the homeless citizens of Los Angeles during COVID 19.

19. Plaintiff is an ordained minister and pastor of his church *Yes We Can Worship Center*.  While Plaintiff was protesting, Defendant, Amy Wakefield exited the Getty House in the company of two police officers as she was screaming at Plaintiff, stating he was he a convicted felon, and that he needed to leave the street. Defendant Smith stated that as long as Plaintiff stood 100 feet away that he would be ok.

20. Plaintiff did not get closer than 100 feet from the Getty House. Defendant Smith then came out of the Getty House and she directed 2 LAPD officers to arrest Plaintiff.  Plaintiff was taken into custody and transported to the LAPD Rampart division.  Plaintiff was then fingerprinted, photographed  and booked. Plaintiff was formally charged with felony stalking and he was held on a $150,000.00 bail.  After being held for 6 hours he was released after posting $150,000.00 bail. The criminal charges were not pursued by the District Attorney's office.   The city never reimbursed Plaintiff for the costs of his bail.

21.  Plaintiff's arrest for the blatantly false crimes was intended by the defendants to illegally stop Plaintiff from exercising his First Amendment rights.

22. Defendants AMY WAKELAND, Sergeant SMITH and Does 1-10, deliberately and knowingly misrepresented the facts of the incident and/or the

**COMPLAINT FOR DAMAGES**

behavior of Plaintiff in their reporting of the incident. These misrepresentations were provided to the Los Angeles County District Attorney's Office with the knowledge and purpose of causing plaintiff to defend himself against criminal charges, which these Defendants knew were false.

23.   Defendants AMY WAKELAND, Sergeant SMITH and Does 1-10 subjected Plaintiff, to the violation of his rights to free speech and assembly under the First Amendment.

24. Subsequently, the criminal charges against Plaintiff were dismissed by the District Attorney's office.

25. PLAINTIFF was subjected restraint of freedom, false imprisonment, violations of his rights under the First Amendment, and unlawful, malicious prosecution of criminal charges, in derogation of his civil rights, by Defendants AMY WAKELAND, Sergeant SMITH and Does 1-10.

26. At all times, Defendants AMY WAKELAND, Sergeant SMITH and Does 1-10, knew their actions were unlawful and that PLAINTIFF had the Constitutional right to be free om an unlawful deprivation of liberty from an unlawful arrest and false imprisonment, stemming from violations of his right to free speech, free assembly and from malicious criminal prosecution in derogation of his Constitutional rights, including the federal due process right not to be subjected to criminal charges and/or to defend against such charges on the basis of deliberately fabricated evidence by the police and Defendants AMY WAKELAND, Sergeant SMITH and Does 1-10.

27.   As a result of the incident described above, in which Plaintiff was subjected to constitutionally violative conduct and liberty deprivations, Plaintiff sustained fear, anxiety, emotional distress, and economic and noneconomic damages.

28. With respect to any violations committed by one officer, where another was close enough and had sufficient time to stop the violations, but failed to do so, they failed to intervene and are liable for both their own violations and as integral participants of one another's violations.

**COMPLAINT FOR DAMAGES**

29. PLAINTIFF also suffered monetary loss from Defendants' violations, by incurring a loss of income, bail fees, and attorneys' fees in defending himself against the unfounded and knowingly false criminal charges.

30. The conduct of Defendants AMY WAKELAND, Sergeant SMITH and Does 1-10 was malicious, despicable, wanton, and oppressive, entitling PLAINTIFF to an award of punitive damages against said Defendants.

31. At all material times and, alternatively, the actions and omissions of Defendants were intentional, and/or wanton and/or willful, and/or reckless, and/or callous, and/or malicious, and/or deliberately indifferent to PLAINTIFF's rights, and/or negligent.

32. As a direct and proximate result of each Defendant's acts and/or omissions, as set forth above, PLAINTIFF sustained the following injuries and damages, past and future, including, but not limited to:

a. Economic damages, including, but not limited to, out of pocket expenses including, but not limited to, various fees/costs related to PLAINTIFF's defense against a maliciously maintained criminal prosecution, and loss of income;

b. Emotional distress, pain and suffering, fear, anxiety, sleeplessness, humiliation, indignity, and loss of liberty.

c. Loss of enjoyment of life and other continued pain and suffering;

d. All other legally cognizable special and general damages;

e. Violations of federal constitutional rights; and,

i. All damages, costs, and attorneys' fees and penalties recoverable under 42 U.S.C. §§ 1983, 1988, California Civil Code §§ 52 and 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

///

///

///

**COMPLAINT FOR DAMAGES**

# FIRST CAUSE OF ACTION

## (42 U.S.C. § 1983 – FIRST and FOURTH AMENDMENT VIOLATIONS) PLAINTIFF AGAINST DEFENDANTS MILLER, MILEY, LEE, and DOES 1-20

33. PLAINTIFF re-alleges and incorporates by reference each and every allegation contained in the paragraphs above, as though fully set forth here.

34. By the willful and joint actions and omissions described above, Defendants AMY WAKELAND, Sergeant SMITH and Does 1-10 violated 42 U.S.C. § 1983, depriving PLAINTIFF of the following clearly established and well-settled constitutional rights that are protected by the First and Fourth Amendments to the U.S. Constitution:

a. The right to be free from government conduct and/or the exercise of discretion by a government official that is in retaliation for and in response to the exercise of free speech, including the right to be profane, to publicly express criticism of or an opinion about the government and/or government officials and/or public employees and/or to question a public official or public employee's job performance and/or the right to complain about government conduct, as secured by the First Amendment;

b. The right to be free from unreasonable searches and/or seizures, as secured by the Fourth Amendment;

c. The right to be free from the use of unlawful and/or unreasonable force, as secured by the Fourth Amendment;

d. The right to be free from excessive and unreasonable force in the course of arrest or detention, as secured by the Fourth Amendment;

e. The right to be free from malicious prosecution and abuse of process, as secured by the Fourth and Fourteenth Amendments; and

f. The right to be free from deliberately fabricated evidence, as secured by the Fourth and Fourteenth Amendments.

COMPLAINT FOR DAMAGES

35. Plaintiff sustained injuries and damages, as set forth at ¶ 33 above, as a direct and proximate result of Defendants' actions and/or omissions. PLAINTIFF is, therefore, entitled to general and compensatory damages in an amount to be proven at trial.

36. Any supervisors, that failed to prevent the unconstitutional acts of said Defendants and failed to properly supervise them are liable directly and in their capacity as a supervisor.

37. Defendants subjected Plaintiff to their wrongful conduct, and deprived Plaintiff of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions. Thus, the conduct of the individual Defendants and DOES 1-10 entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law.

38. PLAINTIFF is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988 and other applicable California codes and laws.

## SECOND CAUSE OF ACTION

### (MALICIOUS PROSECUTION)

**PLAINTIFF AGAINST DEFENDANTS AMY WAKELAND, Sergeant SMITH and Does 1-10**.

39. PLAINTIFF re-alleges and incorporates by reference each and every allegation

contained in the paragraphs above, as though fully set forth here.

40. At all relevant times herein, Defendants AMY WAKELAND, Sergeant SMITH and Does 1-10 were sworn police officers for the LAPD, and acted within the scope of their authority and pursuant to their duties as police officers.

//

41. Defendants DAMY WAKELAND, Sergeant SMITH and Does 1-10 agreed, conspired, and acted in concert to falsely and maliciously initiate, cause,

**COMPLAINT FOR DAMAGES**

maintain, encourage, facilitate, and complete a false arrest and criminal prosecution of PLAINTIFF for the untrue-but-claimed violation(s) of Penal Code § ///////////////// by the Los Angeles County District Attorney's Office. Among other things, Defendants materially misrepresented their reporting of the April 28, 2021 incident and its subsequent investigation and/or failed to disclose the truth of what occurred.

42. Among the acts pursuant to such conspiracy and agreement, Defendants AMY WAKELAND, Sergeant SMITH and Does 1-10MILLER, MILEY, and LEE materially fabricated evidence, misled prosecutors, failed to disclose material facts, and committed perjury with the improper purpose of procuring said criminal prosecution, maintaining said criminal prosecution, and/or in completing the criminal Charges and setting a larger bail, pursuant to which PLAINTIFF was seized, arrested, subjected to the threat of a criminal conviction and the stress of a criminal trial, and pursuant to which the case eventually dropped by the District Attorney's office.

43. As a proximate cause of the criminal charges unlawfully instigated by Defendants, PLAINTIFF was damaged by the loss of his Constitutional rights, as set above, in the defense of the unmeritorious/maliciously instituted and maintained criminal charges, incurring bail fees, loss of earnings, attorneys' fees, and other costs and expenses, for which Plaintiff seeks damages in an amount according to proof.

44. The acts of Defendants were willful, wanton, malicious, and oppressive, and were motivated by a desire to harm Plaintiff for the reasons mentioned in the paragraphs above, or by hatred of or by ill-will toward PLAINTIFF.

45. Defendant CITY is not sued directly in this cause of action, but is named because it is liable under California Government Code § 815.2 for injury proximately caused by an act or omission of an employee, committed within the course and scope of the employees' employment.

///

46. As a proximate result of the foregoing wrongful acts, Plaintiff sustained injuries and damages, as set forth above. Plaintiff is, therefore, entitled to general and

**COMPLAINT FOR DAMAGES**

1  compensatory damages in an amount to be proven at trial.

2      48. In committing the acts alleged above, Defendants acted maliciously and/or

3  were guilty of a wanton and reckless disregard for the rights, safety, and emotional

4  well-being of Plaintiff, and by reason thereof, Plaintiff is entitled to punitive damages

5  against the individual defendants in an amount to be proven at trial. No punitive

6  damages are sought against the CITY directly.

7  **THIRD CAUSE OF ACTION**

8  **(FALSE ARREST AND FALSE IMPRISONMENT)**

9  **PLAINTIFF AGAINST DEFENDANTS AMY WAKELAND, Sergeant**

10  **SMITH and Does 1-10**

11      49. PLAINTIFF re-alleges and incorporates by reference each and every

12  allegation

13  contained in the paragraphs above, as though fully set forth here.

14      50. By the acts of the individually named Defendants and DOES 1-10, as

15  alleged above, Plaintiff was falsely arrested and/or falsely imprisoned, thereby

16  entitling her to damages pursuant to California law.

17      51. The aiding and abetting and/or failure to intervene and/or failure to prevent

18  this false arrest and/or false imprisonment gives rise to liability on the part of the

19  other, individually named and/or DOE Defendants.

20      52. Defendant CITY is not sued directly in this cause of action, but is named

21  because it is liable under California Government Code § 815.2 for injury proximately

22  caused by an act or omission of an employee, committed within the course and scope

23  of the employees' employment.

24      53. As a proximate result of the foregoing wrongful acts, Plaintiff sustained

25  injuries and damages, as set forth above. Plaintiff is, therefore, entitled to general and

26  compensatory damages in an amount to be proven at trial.

27      54. In committing the acts alleged above, Defendants acted maliciously and/or

28  were guilty of a wanton and reckless disregard for the rights, safety, and emotional

1  well-being of Plaintiff, and by reason thereof, Plaintiff is entitled to punitive damages

2  against these individual defendants in an amount to be proven at trial. No punitive

3  damages are sought against the CITY directly.

4  **PRAYER FOR RELIEF**

5  WHEREFORE, PLAINTIFF respectfully requests the following relief against

6  each and every Defendant herein, jointly and severally:

7  a. Compensatory damages in an amount according to proof and which is fair, just and

8  reasonable;

9  b. Punitive damages against the individual Defendants, under 42 U.S.C. § 1983 and

10  California law, in an amount according to proof and which is fair, just, and reasonable

11  (punitive damages are not sought against Defendant CITY);

12  c. For attorney's fees and costs of suit under 42 U.S.C. § 1988;

13  d. All other damages, penalties, costs, interest, and attorneys' fees as allowed

14  by 42 U.S.C. §§ 1983 and 1988, California Code of Civil Procedure § 1021.5, and as

15  otherwise may be allowed by California and/or federal law;

16  e. For such other and further relief as this Court may deem appropriate, just,

17  or proper.

18  Respectfully Submitted,

19  Dated: May 2, 2022          **THE LAW OFFICES OF HUMBERTO GUIZAR**

20

21

22          By: _____

23              HUMBERTO GUIZAR
                CHRISTIAN CONTRERAS
                Attorneys for Plaintiff

24

25

26

27

28

**COMPLAINT FOR DAMAGES**

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: May 2, 2022                    **THE LAW OFFICES OF HUMBERTO GUIZAR**

By: _____

HUMBERTO GUIZAR
CHRISTIAN CONTRERAS
Attorneys for Plaintiff

**COMPLAINT FOR DAMAGES**

# EXHIBIT E

**MICHAEL N. FEUER,** City Attorney
**KATHLEEN A. KENEALY,** Chief Deputy City Attorney (SBN 212289)
**SCOTT MARCUS,** Senior Assistant City Attorney (SBN 184980)
**CORY M. BRENTE,** Senior Assistant City Attorney (SBN 115453)
**JAMES V. BILEK,** Deputy City Attorney (SBN 286291)
200 North Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Phone No.: (213) 978-7025
Fax No.: (213) 978-8785
Email: James.Bilek@lacity.org

Attorneys for Defendant **CITY OF LOS ANGELES, a municipal corporation**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SHERMAN D. MANNING,

              Plaintiff,

    vs.

CITY OF LOS ANGELES, AMY WAKELAND and DOES 1 thru 10, inclusive,

              Defendants.

**CASE NO.**

**LASC CASE NO: 21STCV15538**
[*Action Filed April 26, 2021*]
[*Assigned: Hon Judge: Terry Green; Dept. 14*]

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§1441 (a) and 1446 (a); DECLARATION OF JAMES V. BILEK AND ANNE C. TREMBLAY; AND SUPPORTING EXHIBITS**

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

    PLEASE TAKE NOTICE that Defendant **CITY OF LOS ANGELES** hereby removes this action from the Superior Court for the State of California, County of Los Angeles to the United States District Court for the Central District of California. The removal is made pursuant to 28 U.S.C. § 1446 (a), on the facts set forth below:

    1.    The CITY OF LOS ANGELES is a named defendant in this civil action filed in the Superior Court of the State of California, County of Los Angeles entitled *Sherman D. Manning v. City of Los Angeles, et al.*, Superior Court Case No. 21STCV15538 (hereinafter "Plaintiff's Complaint"). Plaintiff filed his Complaint on April 26, 2021. The

1

following are true and correct copies of the State Court documents in the above action with referenced exhibit numbers.  Plaintiff's Complaint (Exhibit 1); Summons (Exhibit 2); Civil Case Cover Sheet (Exhibit 3); Civil Case Cover Sheet Addendum and Statement of Location (Exhibit 4); Notice of Case Assignment-Unlimited Civil Case (Exhibit 5); 04-28-2021 Order to Show Cause Hearing re Failure to file proof of service (Exhibit 6); 04-28-2021 Certificate of Mailing (Exhibit 7); 07-16-2021 Minute Order (Order to Show Cause Re: Failure to File Proof of Service) (Exhibit 8); 07-16-2021 Certificate of Mailing re Minute Order (Order to Show Cause Re: Failure to File Proof of Service) (Exhibit 9); 10-05-2021 Minute Order (Order to Show Cause Re: Failure to File Proof of Service) (Exhibit 10); 10-05-2021 Certificate of Mailing re Minute Order (Order to Show Cause Re: Failure to File Proof of Service) (Exhibit 11); 10-15-2021 Proof of Service (Exhibit 12); 10-15-2021 Notice re: Continuance of Hearing and Order (Exhibit 13); 10-19-2021 Minute Order re Order to Show Cause re: Dismissal) (Exhibit 14); and 10-19-2021 Certificate of Mailing for (Order to Show Cause re: Dismissal) (Exhibit 15).

2.    This action meets the original jurisdiction requirements of 28 USC §1441(a) and is removable by CITY OF LOS ANGELES pursuant to 28 USC § 1446(a).  A case is removable from state to federal court if the action could have been originally commenced in federal court.  28 USC § 1441(a); *Grubbs v. General Electric Credit Corp*., 405 U.S. 699, 702 (1972).  The propriety of removal is determined at the time the petition for removal is filed by reference to the plaintiff's complaint filed in state court. *La Chemise Lacoste v. Alligator Co.,* 506 F.2d 339, 343-44 (3d Cir. 1974).  When the complaint states a claim invoking the original jurisdiction of the federal court, the action is removable. *Id*. Under the Judicial Code, federal district courts have original jurisdiction in the district courts over all actions brought under 42 USC § 1983.  *See* 28 USC § 1343(a)(3). Moreover, the Code confers original jurisdiction in the district courts over all actions involving federal questions. *See* 28 USC § 1331.

3. The gravamen of this action is the federal civil rights claims set forth in the first and only cause of action of Plaintiff's Complaint.

4. Defendant CITY OF LOS ANGELES was served with Plaintiff's Complaint on September 21, 2021, and consents to this removal. (See Declaration of James V. Bilek). There is no record that named defendant AMY WAKELAND has been served with Plaintiff's Complaint and, therefore, Defendant CITY OF LOS ANGELES does not need AMY WAKELAND's consent to remove this action. (See Declarations of James V. Bilek and Anne C. Tremblay).

5. Further, other than those persons identified above and the persons identified in the caption as "DOES 1 thru 10" there are no other named defendants in this lawsuit. Therefore, there are no other defendants who need to consent in order for this case to be removed. (See Declaration of James V. Bilek).

6. The Notice of Removal is filed with this Court within 30 days after Defendant CITY OF LOS ANGELES was served with Plaintiff's Complaint on September 21, 2021. (See Declaration of James V. Bilek).

7. The Notice of Removal is being filed in this Court and in the Superior Court of the State of California, County of Los Angeles.

WHEREFORE, the above-entitled action, now pending in the Superior Court of the State of California, County of Los Angeles, is removed to the United States District Court for the Central District of California.

DATED:      October 21, 2021          Respectfully submitted,

**MICHAEL N. FEUER**, City Attorney
**KATHLEEN A. KENEALY,** Chief Deputy City Attorney
**CORY M. BRENTE**, Senior Assistant City Attorney

By:  /s/ *James V. Bilek*
_____

    **JAMES V. BILEK,** Deputy City Attorney
    *Attorneys for Defendant* **CITY OF LOS ANGELES,**
    **a municipal corporation**

3

**DECLARATION OF JAMES V. BILEK**

I, James V. Bilek, do hereby declare that I have personal knowledge of the facts set forth herein, except for those facts stated upon information and belief, and that if called as a witness in this case, I could and would competently testify as follows:

1.      I am a Deputy City Attorney for the City of Los Angeles.  In that capacity, I have been assigned to assist in representing Defendant CITY OF LOS ANGELES in the case of *Sherman D. Manning v. City of Los Angeles, et al.*, Superior Court Case No. 21STCV15538, now pending in the Los Angeles Superior Court.

8.      2.      Plaintiff filed his Complaint on April 26, 2021.  I am informed and believe that the following are true and correct copies of the State Court documents in the above action with referenced exhibit numbers.  Plaintiff's Complaint (Exhibit 1); Summons (Exhibit 2); Civil Case Cover Sheet (Exhibit 3); Civil Case Cover Sheet Addendum and Statement of Location (Exhibit 4); Notice of Case Assignment-Unlimited Civil Case (Exhibit 5); 04-28-2021 Order to Show Cause Hearing re Failure to file proof of service (Exhibit 6); 04-28-2021 Certificate of Mailing (Exhibit 7); 07-16-2021 Minute Order (Order to Show Cause Re: Failure to File Proof of Service) (Exhibit 8); 07-16-2021 Certificate of Mailing re Minute Order (Order to Show Cause Re: Failure to File Proof of Service) (Exhibit 9); 10-05-2021 Minute Order (Order to Show Cause Re: Failure to File Proof of Service) (Exhibit 10); and 10-05-2021 Certificate of Mailing re Minute Order (Order to Show Cause Re: Failure to File Proof of Service) (Exhibit 11); 10-15-2021 Proof of Service (Exhibit 12); 10-15-2021 Notice re: Continuance of Hearing and Order (Exhibit 13); 10-19-2021 Minute Order re Order to Show Cause re: Dismissal) (Exhibit 14); and 10-19-2021 Certificate of Mailing for (Order to Show Cause re: Dismissal) (Exhibit 15).

3.      Defendant CITY OF LOS ANGELES was served with Plaintiff's Complaint on September 21, 2021, and consents to this removal. Attached hereto as Exhibit 16 is a true and correct copy of the Summons served on CITY OF LOS ANGELES. I am informed and believe that there is no record that named defendant AMY WAKELAND

4

has been served with Plaintiff's Complaint and, therefore, Defendant CITY OF LOS ANGELES does not need AMY WAKELAND's consent to remove this action. (See Declaration of Anne C. Tremblay).

4.      Further, other than those persons identified above and the persons identified in the caption as "DOES 1 thru 10" there are no other named defendants in this lawsuit. Therefore, there are no other defendants who need to consent in order for this case to be removed.

5.      This Notice of Removal is filed with this Court within 30 days after Defendant CITY OF LOS ANGELES was served with Plaintiff's Complaint on September 21, 2021.

6.      The Notice of Removal is being filed in this Court and in the Los Angeles Superior Court.


I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed on October 21, 2021, at Los Angeles, California.



*James V. Bilek*
_____
James V. Bilek, Declarant

1  ## DECLARATION OF ANNE C. TREMBLAY

2

3  I, Anne C. Tremblay, do hereby declare that I have personal knowledge of the facts

4  set forth herein and that if called as a witness in this case, I could and would competently

5  testify as follows:

6  1.      I am employed by the City of Los Angeles.  I am the current Chief Legal

7  Counsel for the Mayor of the City of Los Angeles.  I write this declaration for the case of

8  *Sherman D. Manning v. City of Los Angeles, et al.*, Superior Court Case No.

9  21STCV15538, now pending in the Los Angeles Superior Court.

10  2.      On October 21, 2021, I spoke with First Lady of Los Angeles Amy

11  Wakeland who advised me that she has not been served and/or properly served with the

12  Summons and Complaint for this matter.  Therefore, her consent is not required to remove

13  this case.

14  I declare under penalty of perjury pursuant to the laws of the United States of

15  America that the foregoing is true and correct.

16

17  Executed on October 21, 2021, at Los Angeles, California.

18

19

20  Anne C. Tremblay, Declarant

21

22

23

24

25

26

27

28                                                    6

1

## PROOF OF SERVICE

2

3    I, MARGARIT AVESYAN, declare as follows:

4    At the time of service I was over 18 years of age and not a party to this action.
My business address is 200 N. Main Street, 600 City Hall East, Los Angeles, CA
5    90012, which is the County, City and State where this mailing occurred.

6    On October 5, 2021, I served the document(s) described as: **NOTICE OF
REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1441 (a) and 1446 (a);
7    DECLARATIONS OF JAMES V. BILEK AND ANNE C. TREMBLAY; AND
SUPPORTING EXHIBITS** on all interested parties in this action:

8

9    **PLAINTIFF IN PRO PER**              **Plaintiff In Pro Per**
**Sherman D. Manning**                **Ph: (213) 858-2608**
10   **5857 S. Central Ave., # 108**       **Email:**
**Los Angeles, CA 90001**             **shermandmanning@gmail.com**
11

12

13    I enclosed true copies of the documents(s) in a sealed envelope or package
addressed to the person(s) address(es) as above and:
14

15    **[ X ]  BY UNITED STATES MAIL:**
16    **[ X ]** I placed the envelope for collection and mailing, following our ordinary
business practices.  I am readily familiar with this business's practice for collecting and
17   processing correspondence for mailing.  On the same day that correspondence is placed
for collection and mailing, it is deposited in the ordinary course of business with the
18   United States Postal Service, in a sealed envelope with postage fully prepaid.  I am
aware that on motion of the party served, service is presumed invalid if the postal
19   cancellation date or postage meter date is more than one day after date of deposit for
mailing affidavit.
20

21

22    I declare under penalty of perjury under the laws of the State of California that
the foregoing is true and correct.
23

24    Executed on October 21, 2021, in Los Angeles, California.

25

26

27                                      MARGARIT AVESYAN

28

7

Electronically FILED by Superior Court of California, County of Los Angeles on 04/26/2021 12:00 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk
21STCV15538

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Terry Green

**PLD-PI-001**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Sherman D. Manning, pro per
5857 S Central Ave, #108
Los Angeles, CA 90001

TELEPHONE NO: 213-858-2608 FAX NO. *(Optional)*
E-MAIL ADDRESS *(Optional):* shermandmanning@gmail.com
ATTORNEY FOR *(Name):* Sherman Manning

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: CENTRAL

PLAINTIFF: SHERMAN D. MANNING

DEFENDANT: CITY OF LOS ANGELES, AMY WAKELAND

[✓] DOES 1 TO 10

COMPLAINT—Personal Injury, Property Damage, Wrongful Death
[ ] AMENDED *(Number):*
Type *(check all that apply):*
[ ] MOTOR VEHICLE [✓] OTHER *(specify):*
    [ ] Property Damage [ ] Wrongful Death
    [✓] Personal Injury [ ] Other Damages *(specify):*

Jurisdiction *(check all that apply):*
[ ] ACTION IS A LIMITED CIVIL CASE
  Amount demanded [ ] does not exceed $10,000
           [ ] exceeds $10,000, but does not exceed $25,000
[✓] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint
    [ ] from limited to unlimited
    [ ] from unlimited to limited

CASE NUMBER:
21STCV15538

1. **Plaintiff** *(name or names):* Sherman D. Manning
  alleges causes of action against **defendant** *(name or names):*
  City of Los Angeles (Los Angeles Police Dept.) and Amy Wakeland
2. This pleading, including attachments and exhibits, consists of the following number of pages:
3. Each plaintiff named above is a competent adult
  a. [ ] **except plaintiff** *(name):*
    (1) [ ] a corporation qualified to do business in California
    (2) [ ] an unincorporated entity *(describe):*
    (3) [ ] a public entity *(describe):*
    (4) [ ] a minor [ ] an adult
      (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
      (b) [ ] other *(specify):*
    (5) [ ] other *(specify):*
  b. [ ] **except plaintiff** *(name):*
    (1) [ ] a corporation qualified to do business in California
    (2) [ ] an unincorporated entity *(describe):*
    (3) [ ] a public entity *(describe):*
    (4) [ ] a minor [ ] an adult
      (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
      (b) [ ] other *(specify):*
    (5) [ ] other *(specify):*

[ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

Exhibit 1 - Page 8

PLD-PI-001

| SHORT TITLE:<br><br>Manning v. City of Los Angeles | CASE NUMBER: |
|---|---|

4. ☐ Plaintiff (name):

is doing business under the fictitious name (specify):

and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person
   a. ☑ **except** defendant (name): City of Los Angeles
      (1) ☐ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity (describe):

      (4) ☑ a public entity (describe):
          Municipality
      (5) ☐ other (specify):

   b. ☐ **except** defendant (name):
      (1) ☐ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity (describe):

      (4) ☐ a public entity (describe):

      (5) ☐ other (specify):

   c. ☐ **except** defendant (name):
      (1) ☐ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity (describe):

      (4) ☐ a public entity (describe):

      (5) ☐ other (specify):

   d. ☐ **except** defendant (name):
      (1) ☐ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity (describe):

      (4) ☐ a public entity (describe):

      (5) ☐ other (specify):

   ☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
   a. ☑ Doe defendants (specify Doe numbers): 1 - 10 _____ were the agents or employees of other named defendants and acted within the scope of that agency or employment.
   b. ☐ Doe defendants (specify Doe numbers): _____ are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are (names):

8. This court is the proper court because
   a. ☑ at least one defendant now resides in its jurisdictional area.
   b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
   c. ☑ injury to person or damage to personal property occurred in its jurisdictional area.
   d. ☐ other (specify):

9. ☑ Plaintiff is required to comply with a claims statute, **and**
   a. ☑ has complied with applicable claims statutes, **or**
   b. ☐ is excused from complying because (specify):

**Exhibit 1 -  Page 9**

PLD-PI-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Manning v. City of Los Angeles | |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   a. ☐  Motor Vehicle
   b. ☐  General Negligence
   c. ☑  Intentional Tort
   d. ☐  Products Liability
   e. ☐  Premises Liability
   f. ☑  Other *(specify)*:

   42 U.S.C. 1983 -- deprivation and/or violation of civil rights

11. Plaintiff has suffered
   a. ☐  wage loss
   b. ☐  loss of use of property
   c. ☑  hospital and medical expenses
   d. ☑  general damage
   e. ☐  property damage
   f. ☑  loss of earning capacity
   g. ☑  other damage *(specify)*:

   Bail bond sum of $13,500

12. ☐  The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☐  listed in Attachment 12.
   b. ☐  as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

   .

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☑  compensatory damages
      (2) ☐  punitive damages
   The amount of damages is *(in cases for personal injury or wrongful death, you must check (1))*:
      (1) ☑  according to proof
      (2) ☐  in the amount of: $

15. ☐  The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers)*:

Date:  April 26, 2021

Sherman D. Manning, pro per
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001 [Rev. January 1, 2007]   **COMPLAINT—Personal Injury, Property Damage, Wrongful Death**   Page 3 of 3

Exhibit 1 -  Page 10

PLD-PI-001(3)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Manning v. City of Los Angeles | |

FIRST <u>                        </u>      **CAUSE OF ACTION—Intentional Tort**      Page <u>  4  </u>

(number)

ATTACHMENT TO    [✓] Complaint      [  ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

IT-1. Plaintiff *(name)*:  Sherman Manning

alleges that defendant *(name)*:  unknown officers from LAPD and Amy Wakeland

[✓] Does   <u>  1  </u>   to   <u>  10  </u>

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant intentionally
caused the damage to plaintiff
on *(date)*: April 28, 2021
at *(place)*: 605 S Irving Blvd. (Mayor's Official Residence), Los Angeles, CA 90005

*(description of reasons for liability)*:

On said date, defendant Wakeland in her official capacity as the Mayor's spouse, conspired and
instructed her LAPD security to unlawfully detain and arrest plaintiff for felony stalking.  At said
time, plaintiff was conducting a lawful and peaceful protest in front of the Mayor's Official
Residence to bring attention to the City's poor response to address rampant homelessness.  Said
protest was lawful and in exercise of plaintiff's First Amendment rights.  Plaintiff was wrongfully and
unlawfully taken into custody in violation of his First Amendment rights and transported to MDC
and held there in lieu of $150,000 bail, which was subsequently posted and plaintiff was released
after several hours.  Subsequently, no criminal charges were ever filed against plaintiff.

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(3) [Rev. January 1, 2007]

**CAUSE OF ACTION—Intentional Tort**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

Exhibit 1 -  Page 11

Electronically FILED by Superior Court of California, County of Los Angeles on 04/26/2021 08:00 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk

21STCV15538

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CITY OF LOS ANGELES, AMY WAKELAND and DOES 1 thru 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SHERMAN D. MANNING

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES<br>111 N Hill Street, Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>21STCV15538 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Sherman D. Manning, 5857 S. Central Ave., Los Angeles, CA 90001, 213-858-2608

Sherri R. Carter Executive Officer / Clerk of Court

| DATE:<br>*(Fecha)* 04/26/2021 | Clerk, by<br>*(Secretario)* _____ N. Alvarez | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

Exhibit 2 - Page 12

Electronically FILED by Superior Court of California, County of Los Angeles on 04/26/2021 12:00 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez, Deputy Clerk
21STCV15538

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Sherman D. Manning<br>5857 S. Central Avenue<br>Los Angeles, CA 90001 | |

TELEPHONE NO.: 213-858-2608   FAX NO.:

ATTORNEY FOR *(Name):* Pro per

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central

CASE NAME:
SHERMAN D. MANNING v. CITY OF LOS ANGELES, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited   [ ] Limited<br>(Amount      (Amount<br>demanded    demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 21STCV15538<br><br>JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[✓] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[✓] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is  [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 26, 2021

Sherman D. Manning, pro per
_____
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

Exhibit 3 - Page 13

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) (*if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto*)

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability (*not asbestos or
  toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) (*not civil
  harassment*) (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract (*not unlawful detainer
      or wrongful eviction*)
  Contract/Warranty Breach–Seller
    Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage (*not provisionally
  complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent
    domain, landlord/tenant. or
    foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  (*arising from provisionally complex
  case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment (*non-
    domestic relations*)
  Sister State Judgment
  Administrative Agency Award
    (*not unpaid taxes*)
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
  above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-
    harassment*)
  Mechanics Lien
  Other Commercial Complaint
    Case (*non-tort/non-complex*)
  Other Civil Complaint
    (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition (*not specified
  above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

Exhibit  3 -  Page 14

| SHORT TITLE Manning v. City of Los Angeles, et al. | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death — Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

Exhibit  4 -  Page 15

| SHORT TITLE: Manning v. City of Los Angeles, et al. | CASE NUMBER | |
|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons – See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☑ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3<br>1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1, 2, 3<br>10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2, 5<br>2, 5<br>1, 2, 5<br>1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case<br>☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11<br>5, 11<br>5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 5<br>1, 2, 3, 5<br>1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6<br>2, 6<br>2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Exhibit  4 -  Page 16

| SHORT TITLE: | Manning v. City of Los Angeles, et al. | CASE NUMBER | |
|---|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not<br>Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☑ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

Exhibit  4 -  Page 17

| SHORT TITLE: Manning v. City of Los Angeles, et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: | ADDRESS: |
|---|---|
| ☑ 1. ☑ 2. ☑ 3. ☐ 4. ☑ 5. ☐ 6. ☐ 7. ☑ 8. ☐ 9. ☐ 10. ☐ 11. | 605 S Irving Blvd. |

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90005 |
|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___CENTRAL___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: April 26, 2021

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

Exhibit 4 - Page 18

| | | SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | | Reserved for Clerk's File Stamp |
|---|---|---|---|---|

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

**NOTICE OF CASE ASSIGNMENT**

**UNLIMITED CIVIL CASE**

**FILED**
Superior Court of California
County of Los Angeles
04/26/2021
Sherri R. Carter, Executive Officer / Clerk of Court
By: _____ N. Alvarez _____ Deputy

Your case is assigned for all purposes to the judicial officer indicated below.

CASE NUMBER:
21STCV15538

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Terry Green | 14 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 04/26/2021
(Date)

LACIV 190 (Rev 6/18)
LASC Approved 05/06

Sherri R. Carter, Executive Officer / Clerk of Court

By N. Alvarez _____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

Exhibit 5 - Page 19

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

Exhibit  5 -  Page 20

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: Stanley Mosk Courthouse 111 North Hill Street, Los Angeles, CA 90012 | **FILED** Superior Court of California County of Los Angeles 04/28/2021 Sherri R. Carter, Executive Officer / Clerk of Court By: _____ P. Cortez _____ Deputy |
| PLAINTIFF(S): Sherman D. Manning | |
| DEFENDANT(S): City of Los Angeles et al | |
| **ORDER TO SHOW CAUSE HEARING** | CASE NUMBER: 21STCV15538 |

To the party / attorney of record:

You are ordered to appear for an Order to Show Cause Hearing on 07/16/2021 at 8:45 AM in department 14 of this court, Stanley Mosk Courthouse, and show cause why sanctions should not be imposed for:

[✔]   Failure to file proof of service.

Failure to comply or appear may result in sanctions pursuant to one or more of the following: California Rules of Court, rule 2.30 and rule 3.1340; Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.310, 583.360, 583.410, 583.420, 583.430; and Government Code section 68608.

[✔]   To avoid a mandatory appearance all required documents must be filed at least 5 days prior to the date of the hearing.

**Terry Green**

Dated: 04/28/2021

Terry Green / Judge
Judicial Officer

**ORDER TO SHOW CAUSE HEARING**

LACIV 166 (Rev. 09/08)
LASC Approved 06-04

Cal. Rules of Court, rule 2.30
LASC Local Rules, Chapter 7

Exhibit  6  -  Page 21

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>04/28/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ P. Cortez _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Sherman D. Manning | |
| DEFENDANT/RESPONDENT:<br>City of Los Angeles et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>21STCV15538 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Order to Show Cause Failure to File Proof of Service upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.


Sherman D. Manning
5857 S. Central Ave.
#108
Los Angeles, CA  90001


Sherri R. Carter, Executive Officer / Clerk of Court

Dated: <u>04/28/2021</u>

By:  <u>P. Cortez</u>
Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 14

**21STCV15538**                                                    July 16, 2021
**SHERMAN D. MANNING vs CITY OF LOS ANGELES, et al.**         8:45 AM

Judge: Honorable Terry Green                 CSR: ~~None~~ Rosalyn Dudley, CSR#6505
Judicial Assistant: M. Ventura               ERM: None
Courtroom Assistant: P. Cortez               Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Sherman D. Manning (Telephonic) by: Dana Cole, Specially Appearing

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Order to Show Cause Re: Failure to File Proof of Service (SELF REPRESENTED PLTF)

The matter is called for hearing.

Specially Appearing counsel on behalf of Plaintiff represents the Plaintiff is currently incarcerated and requests a continuance of the above matter.

Order to Show Cause Re: Failure to File Proof of Service (SELF REPRESENTED PLTF) is continued to 10/05/21 at 08:45 AM in Department 14 at Stanley Mosk Courthouse.

Plaintiff is to give notice.

Certificate of Mailing is attached.

Exhibit  8 -  Page 23

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>07/16/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ M. Ventura _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Sherman D. Manning | |
| DEFENDANT/RESPONDENT:<br>City of Los Angeles et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>21STCV15538 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Order to Show Cause Re: Failure to File Proof of Service (SEL...) of 07/16/2021 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Sherman D. Manning
5857 S. Central Ave.
#108
Los Angeles, CA 90001

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 07/19/2021      By: _M. Ventura_____
                       Deputy Clerk

Exhbit 9 - Page 24

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**10/05/2021**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ M. Ventura _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Sherman D. Manning | |
| DEFENDANT/RESPONDENT:<br>City of Los Angeles et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>21STCV15538 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Order to Show Cause Re: Failure to File Proof of Service (SEL...) of 10/05/2021  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.


Sherman D. Manning
5857 S. Central Ave.
#108
Los Angeles, CA  90001


Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 10/6/2021                    By:  M. Ventura _____
                                              Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 14

**21STCV15538**                                                    October 5, 2021
**SHERMAN D. MANNING vs CITY OF LOS ANGELES, et al.**               8:45 AM

Judge: Honorable Terry Green                CSR: Rosalia Rodas, CSR#13672
Judicial Assistant: M. Ventura             ERM: None
Courtroom Assistant: P. Cortez             Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): No Appearances

**NATURE OF PROCEEDINGS:** Order to Show Cause Re: Failure to File Proof of Service (SELF REPRESENTED PLTF)

The matter is called for hearing.

The Order to Show Cause Re: Failure to File Proof of Service is continued as there are no appearances made by or for either party.

Order to Show Cause Re: Dismissal (SELF REPRESENTED) is scheduled for 10/19/21 at 08:45 AM in Department 14 at Stanley Mosk Courthouse.

Order to Show Cause Re: Failure to File Proof of Service (SELF REPRESENTED PLTF) is continued to 10/19/21 at 08:45 AM in Department 14 at Stanley Mosk Courthouse.

Clerk is to give notice.

Certificate of Mailing is attached.

Minute Order                                              Page 1 of 1

Exhibit 11 - Page 26

Case 2:21-cv-08358-FMO-KS Document 14-24 Filed 01/12/22 Page 1 of 24 Page ID #:494

Electronically FILED by Superior Court of California, County of Los Angeles on 10/15/2021 ... Sherri R. Carter, Executive Officer/Clerk of Court, by W. Moore,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| Sherman D. Manning, pro per<br>5857 S Central Ave, #108<br>Los Angeles, CA 90001<br><br>TELEPHONE NO.: 213-858-2608    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* shermandmanning@gmail.com<br>ATTORNEY FOR *(Name):* Pro Per | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N Hill ST
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: CENTRAL DIST.

| PLAINTIFF/PETITIONER: SHERMAN D. MANNING | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: CITY OF LOS ANGELES, AMY WAKELAND | 21STCV15538 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. [x] summons
   b. [x] complaint
   c. [ ] Alternative Dispute Resolution (ADR) package
   d. [x] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [ ] other *(specify documents):*

3. a. Party served *(specify name of party as shown on documents served):*

   b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   LASHAVON FREDERICH on behalf of City of Los Angeles and Amy Wakeland

4. Address where the party was served:
   City Hall Lobby

5. I served the party *(check proper box)*
   a. [x] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date):* 9/1/21   (2) at *(time):* Noon

   b. [ ] **by substituted service.** on *(date):*        at *(time):*        I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*        from *(city):*        or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

Exhibit 12 - Page 27

POS-010

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*          (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
  a. Name: Dana M. Cole
  b. Address: 1801 Century Park East, #2500, Los Angeles, CA 90067
  c. Telephone number: 3109904200
  d. **The fee** for service was: $
  e. I am:
    (1) ☒ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      ☐ owner ☐ employee ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
  **or**
9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: October 15, 2021

DANA M. COLE
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ (SIGNATURE)

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form    Save this form    Clear this form

Exhibit 12 - Page 28

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>10/15/2021<br><br>Sherri R. Carter, Executive Officer / Clerk of Court<br><br>By: _____ P. Cortez _____ Deputy |
| PLAINTIFF(S):<br>Sherman D. Manning | |
| DEFENDANT(S):<br>City of Los Angeles et al | |
| **NOTICE RE: CONTINUANCE OF HEARING AND ORDER** | CASE NUMBER:<br>21STCV15538 |

TO THE PLAINTIFF(S) AND ATTORNEY(S) OF RECORD AND / OR PARTIES IN PROPRIA PERSONA:

You are hereby notified that the Order to Show Cause Re: Dismissal & Failure to File Proof of Service previously set for hearing on 10/19/2021 in Department 14 has been reset for hearing in the same department on 10/19/21 *time change at 1:30 PM.

---

## ORDER

You are ordered to give notice by mail forthwith of such fact to all parties and to file proof of service of such notice forthwith in the assigned department, located at Stanley Mosk Courthouse 111 North Hill Street, Los Angeles, CA 90012.

**Terry Green**

Dated: 10/15/2021 _____ Terry Green / Judge
Judicial Officer

**NOTICE RE: CONTINUANCE OF HEARING AND ORDER**

Exhibit 13 - Page 29

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>10/15/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ P. Cortez _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Sherman D. Manning | |
| DEFENDANT/RESPONDENT:<br>City of Los Angeles et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>21STCV15538 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice Re: Continuance of Hearing and Order upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Sherman D. Manning
5857 S. Central Ave.
#108
Los Angeles, CA  90001

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: <u>10/15/2021</u>                    By:  P. Cortez _____
                                                            Deputy Clerk

Exhibit 13 - Page 30
**CERTIFICATE OF MAILING**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 14

**21STCV15538**                                                                            October 19, 2021
**SHERMAN D. MANNING vs CITY OF LOS ANGELES, et al.**                       1:30 PM

Judge: Honorable Terry Green                    CSR: Dulce Moran, CSR#3141
Judicial Assistant: M. Ventura                   ERM: None
Courtroom Assistant: P. Cortez                   Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Sherman D. Manning

For Defendant(s):  No Appearances

Other Appearance Notes: Dana Cole standby counsel for Plaintiff

**NATURE OF PROCEEDINGS:** Order to Show Cause Re: Dismissal (SELF REPRESENTED);

Order to Show Cause Re: Failure to File Proof of Service (SELF REPRESENTED PLTF)

The matters are called for hearing.

There are no appearances made by or for the Defendant.

The Order to Show Cause Re: Dismissal and Order to Show Cause Re: Failure to File Proof of Service are DISCHARGED.

Case Management Conference (SELF REPRESENTED ) is scheduled for 12/13/21 at 08:45 AM in Department 14 at Stanley Mosk Courthouse.

Clerk is to give notice.

Certificate of Mailing is attached.

Exhibit  14 -  Page 31

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>10/19/2021<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ M. Ventura _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Sherman D. Manning | |
| DEFENDANT/RESPONDENT:<br>City of Los Angeles et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>21STCV15538 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Order to Show Cause Re: Dismissal (SELF REPRESENTED);**

**Order...) of 10/19/2021  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Sherman D. Manning
5857 S. Central Ave.
#108
Los Angeles, CA  90001

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: <u>10/20/2021</u>       By:  <u>M. Ventura</u>
                                              Deputy Clerk

Exhibit  15 -  Page 32
**CERTIFICATE OF MAILING**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CITY OF LOS ANGELES, AMY WAKELAND and DOES 1 thru 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SHERMAN D. MANNING

**RECEIVED**

SEP 23 2021

POLICE LITIGATION

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NEW CASE**
CITY ATTORNEY

SEP 22 2021

L22-00408

PLU

SUM-100

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES 111 N Hill Street, Los Angeles, CA 90012 | 21STCV15538 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Sherman D. Manning, 5857 S. Central Ave., Los Angeles, CA 90001, 213-858-2608

Sherri R. Carter Executive Officer / Clerk of Court

| DATE: *(Fecha)* 04/26/2021 | Clerk, by *(Secretario)* N. Alvarez | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☑ as the person sued under the fictitious name of *(specify):* City of L.A.
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☑ by personal delivery on *(date):* 9/21/21 @ 12:15 pm

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Exhibit 16 - Page 33