Humberto M. Guizar, Esq., (SBN 125769)
  *hguizar@ghclegal.com*
Christian Contreras, Esq., (SBN 330269)
  *ccontreras@ghclegal.com*
**THE LAW OFFICES OF HUMBERTO GUIZAR**
**A PROFESSIONAL CORPORATION**
Justice X Building
3500 W. Beverly Blvd.,
Montebello, California 90640
Telephone: (323) 725-1151
Facsimile: (323) 597-0101


Attorneys for Plaintiff,
SHERMAN MANNING

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERMAN MANNING, an individual, | **Case No.: 2:21-cv-08358-FMO-KS** *[Hon. Fernando M. Olguin Hon. Karen L. Stevenson]* |
| Plaintiff, | |
| v. | **PLAINTIFFS' RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS, CONCLUSIONS OF LAW, AND PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| AMY WAKELAND, an individual, CITY OF LOS ANGELES; and DOES 1 through 10, inclusive, | |
| Defendants | |

**DATE:**   November 30, 2022
**TIME:**    10:00 a.m.
**CTRM:**   580

TO THE COURT, ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:

**COMES NOW** Plaintiff SHERMAN MANNING pursuant to Central District California Rule 56-1, hereby submit the following response to Defendant's Statement of Uncontroverted Facts, Response to Defendant's Conclusions of Law in support of their Motion for Summary Judgment/ Adjudication, and Plaintiffs' Undisputed Material Facts.

Moreover, Plaintiffs also hereby submit the Plaintiffs' affirmative, Undisputed Material Facts ("PUMF") # 20 through # 42 which preclude a finding of summary judgment in this matter.

Dated: November 9, 2022     **LAW OFFICES OF HUMBERTO GUIZAR**
                                  **A PROFESSIONAL LAW CORPORATION**

By: _____
       CHRISTIAN CONTRERAS
       Attorney for Plaintiff
       SHERMAN MANNING

## I. DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
|---|---|
| 1. On May 2, 2022 Plaintiff filed his First Amended Complaint, first naming Sergeant Smith as a Defendant, alleging the following causes of action: (1) 42 U.S.C. § 1983 First Amendment and Fourth Amendment Violations; (2) Malicious Prosecution; and (3) False Arrest and False Imprisonment. | 1. Undisputed. |
| 2. In the days prior to his arrest on April 28, 2020, Plaintiff had been protesting in front of the Getty House for approximately five days. | 2. Undisputed. |
| 3. He did not have a set schedule and protested at various times during the day and night. | 3. **Disputed.** Disputed that there was no specific schedule. Plaintiff went to protest depending on what time the other protest participants were available. **Moving Party Evidence:** See Deposition of Plaintiff, Sherman D. Manning ("Manning Depo.") at 24:5-9, attached as |

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
|---|---|
| | Exhibit "3" to the Declaration of Christopher D. Lee ("Lee Decl."). **Non-Moving Party Evidence:** Exhibit A, Sherman Manning Depo., P. 24:24-25 to P. 25:1-5. |
| 4.  According to Plaintiff, he was protesting on behalf of unhoused people of Los Angeles and as part of his protest, he took unhoused people with him to his protest targeted at the Getty House. | 4. **Partially Disputed.** Disputed that this was the extent of the protest. As shown in Plaintiff's facts below, the protest and advocacy was at a larger scale. **Moving Party Evidence:** See Manning Depo. at 8:12-15, 24:24-25:5. **Non-Moving Party Evidence:** Exhibit A, Sherman Manning Depo., P. 15:8-20; P. 19:3-24; P. 44:8-21; P. 45: 1-10; P. 132:2-21. |
| 5.  On one of the days prior to his arrest, Plaintiff had been advised by LAPD officers that protesting within 100 feet of the Getty House violated the Los Angeles Municipal Code. | 5. **Partially Disputed.** Disputed that this was the extent of the advisement. An LAPD officer also measured the distance with PASTOR MANNING and PASTOR MANNING stood outside of the parameters. In fact, Defendant |

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
|---|---|
| | SMITH also spoke with PASTOR MANNING and said he could continue with the protest so long as he stayed outside the boundary previously measured.<br><br>**Objection.** The cited evidence is hearsay and should be stricken.<br><br>**Moving Party Evidence:**<br><br>See Declaration of Sergeant Smith ("Smith Decl.") at ¶ 11.<br><br>**Non-Moving Party Evidence:**<br><br>Exhibit A, Sherman Manning Depo., P. 138:3-24; P. 214:9-25 to P. 215: 1-12; P. 227:14-25; P. 229:15-24; P. 254:8-14.<br><br>Exhibit B, Video of Defendant SMITH and MANNING. At the 4:54 time mark of the video, Defendant SMITH gives PASTOR MANNING a warning that if he steps within the boundary, he would be arrested. As Defendant SMITH gives such warning, SMITH signals towards the front of the property. |

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
|---|---|
| 6. Pursuant to the Los Angeles Municipal Code § 56.45(e), in effect on April 28, 2020: "Any person, acting alone or in concert with others, who pickets, parades or patrols in a manner that is both (1) focused upon the private residence or dwelling of any individual residing within the City of Los Angeles, and (2) takes place within one hundred (100) feet of such private residence shall be guilty of a misdemeanor." | 6. Undisputed. |
| 7. On April 28, 2020, Sergeant Smith was assigned to the Olympic Division Patrol, unit 20L50. She was in full uniform and drove a marked black and white police vehicle. She received a station call to respond to an incident at the Getty House. She was informed that a man, later identified as Plaintiff, had been harassing some of the individuals at the Getty House over a period of days and had again appeared in front of the Getty House, also holding a sign in protest in front of the Getty House. | 7. **Partially Disputed.** Disputed that PASTOR MANNING was harassing some of the individuals at the Getty House. **Objection.** To the extent Defendant SMITH is "informed," such should be stricken as hearsay. **Moving Party Evidence:** See Declaration of Sergeant Smith ("Smith Decl.") at ¶ 4. **Non-Moving Party Evidence:** |

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
|---|---|
| | Exhibit A, Sherman Manning Depo., P. 75:11-24.<br><br>Exhibit B, Video of Defendant SMITH and MANNING. |
| 8. Upon arriving to the scene, Sergeant Smith spoke with Plaintiff, who indicated that he was conducting an ongoing protest directed to the Los Angeles Mayor's residence, the Getty House, regarding homelessness issues. When she spoke with Plaintiff and when she saw him engaged in his protest in her presence, he was standing across from the Getty House approximately 70-75 feet from the Getty House. | 8. **Partially Disputed.**<br>Disputed that PASTOR MANNING was approximately 70-75 feet from the Getty House.<br><br>**Moving Party Evidence:**<br><br>See Declaration of Sergeant Smith ("Smith Decl.") at ¶¶ 5 and 12-13.<br><br>**Non-Moving Party Evidence:**<br><br>Exhibit A, Sherman Manning Depo., P. 138:3-24; P. 214:9-25 to P. 215: 1-12; P. 227:14-25; P. 229:15-24; P. 254:8-14.<br><br>Exhibit B, Video of Defendant SMITH and MANNING. At the 4:54 time mark of the video, Defendant SMITH gives PASTOR MANNING a warning that if he steps within the boundary, he would be arrested. As Defendant SMITH gives such warning, SMITH |

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
|---|---|
| | signals towards the front of the property. |
| 9. Sergeant Smith subsequently personally confirmed the distance by taking a 100-foot measuring tape and stretching it from the Getty House to the spot where Plaintiff was standing and conducting his protest in her presence, and she confirmed with the measuring tape that the spot Plaintiff was protesting was approximately 71 feet from the Getty House. | 9. **Disputed.** Disputed that PASTOR MANNING within 100 feet from the Getty House. **Moving Party Evidence:** See Declaration of Sergeant Smith ("Smith Decl.") at ¶ 12. **Non-Moving Party Evidence:** Exhibit A, Sherman Manning Depo., P. 138:3-24; P. 214:9-25 to P. 215: 1-12; P. 227:14-25; P. 229:15-24; P. 254:8-14. Exhibit B, Video of Defendant SMITH and MANNING. At the 4:54 time mark of the video, Defendant SMITH gives PASTOR MANNING a warning that if he steps within the boundary, he would be arrested. As Defendant SMITH gives such warning, SMITH signals towards the front of the property. |

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
|---|---|
| 10. Therefore, Plaintiff had committed a misdemeanor in Sergeant Smith's presence by continuing to protest, including with a sign, approximately 71 feet from the Getty House, in violation of Los Angeles Municipal Code § 56.45(e). | 10. **Disputed.**<br><br>Disputed that PASTOR MANNING was within 100 feet from the Getty House.<br><br>**Moving Party Evidence:**<br><br>See Declaration of Sergeant Smith ("Smith Decl.") at ¶ 5.<br><br>**Non-Moving Party Evidence:**<br><br>Exhibit A, Sherman Manning Depo., P. 138:3-24; P. 214:9-25 to P. 215: 1-12; P. 227:14-25; P. 229:15-24; P. 254:8-14.<br><br>Exhibit B, Video of Defendant SMITH and MANNING. At the 4:54 time mark of the video, Defendant SMITH gives PASTOR MANNING a warning that if he steps within the boundary, he would be arrested. As Defendant SMITH gives such warning, SMITH signals towards the front of the property. |
| 11. When Sergeant Smith arrived at the Getty House, Ms. Wakeland was also outside and had an | 11. **Partially Disputed.** |

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
|---|---|
| interaction with Plaintiff, where Sergeant Smith overheard her mention Plaintiff had harassed her daughter. | Disputed that PASTOR MANNING was harassing some of the individuals at the Getty House.<br><br>**Objection.** To the extent Defendant SMITH is "overheard" something, such should be stricken as hearsay.<br><br>**Moving Party Evidence:**<br><br>See Declaration of Sergeant Smith ("Smith Decl.") at ¶ 5.<br><br>**Non-Moving Party Evidence:**<br><br>Exhibit A, Sherman Manning Depo., P. 75:11-24.<br><br>Exhibit B, Video of Defendant SMITH and MANNING. |
| 12. Sergeant Smith then interviewed Wakeland and Wakeland's babysitter regarding Plaintiff's actions. Wakeland informed Sergeant Smith that for approximately four days Plaintiff had stood outside her residence ostensibly protesting with signs sometimes, but also harassing Wakeland, her 8-year- | 12.  **Partially Disputed.**<br>Disputed that PASTOR MANNING was harassing some of the individuals at the Getty House. In fact, PASTOR MANNING did not know Wakeland even had a daughter. PASTOR MANNING did not harass her daughter. PASTOR MANNING had zero interactions |

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
|---|---|
| old daughter, and their babysitter. Specifically, Wakeland informed her that 1) Plaintiff often had protested well within 100 feet of the residence, including adjacent to the perimeter; 2) Plaintiff had been protesting several days at the residence, including during the middle of the night and including being excessively loud; 3) Plaintiff had used a megaphone at one point in his protest; 4) Plaintiff had brought homeless individuals with him while engaging in his protest; 5) Plaintiff had chanted "Amy for President" for an extended period of time outside of the window of the residence; 6) Plaintiff had filmed Wakeland, her daughter, and their babysitter at various hours of the day and night; 7) Plaintiff had been yelling outside of Wakeland's daughter's window at night, causing the daughter annoyance, distress, and fear; 8) Plaintiff had approached Wakeland's daughter while she was alone outside on the front porch area of the residence, | with children at his time at the Getty House.<br><br>**Objection.** To the extent Defendant SMITH is "informed," such should be stricken as hearsay.<br><br>**Moving Party Evidence:**<br><br>See Smith Decl. at ¶ 6; see also Deposition of Amy Wakeland ("Wakeland Depo.") at 27:21-28:14, 50:1-56:2, 69:12-22, 71:24-72:5, 114:11-12, attached as Exhibit "4" to the Lee Decl.<br><br>**Non-Moving Party Evidence:**<br><br>Exhibit A, Sherman Manning Depo., P. 75:11-24; P. 128:16-25 and 129: 1-23; P. 139:11-25; P. 211:12-19; P. 217:8-25 to P. 218:1-2, 11-20;<br><br>Exhibit B, Video of Defendant SMITH and MANNING. |

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
|---|---|
| again causing her annoyance and distress; and 9) Plaintiff had filmed Wakeland's daughter while she was in her bathing suit. | |
| 13. Further, Wakeland informed Sergeant Smith that Plaintiff was a convicted and registered sex offender involving rape of a child under the age of 14. Wakeland stated that she was afraid for her daughter's safety, especially in light of his actions over the previous days and because she learned that Plaintiff is a registered sex offender and was in prison. Wakeland stated that she believed that Plaintiff knew when her husband went to work because he seemed to show up to the residence when she and her daughter were home alone. | 13. **Partially Disputed.** Disputed that PASTOR MANNING was harassing some of the individuals at the Getty House. In fact, PASTOR MANNING did not know Wakeland even had a daughter. PASTOR MANNING did not harass her daughter. PASTOR MANNING had zero interactions with children at his time at the Getty House. **Objection.** To the extent Defendant SMITH is "informed," such should be stricken as hearsay. **Moving Party Evidence:** See Smith Decl. at ¶¶ 7 and 9; see also Wakeland Depo. at 71:24-72:5; see also Manning Depo. at 142:23-25; 143:1-3, 145:13-16. **Non-Moving Party Evidence:** |

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
|---|---|
| | Exhibit A, Sherman Manning Depo., P. 75:11-24; P. 128:16-25 and 129: 1-23; P. 139:11-25; P. 211:12-19; P. 217:8-25 to P. 218:1-2, 11-20;<br><br>Exhibit B, Video of Defendant SMITH and MANNING. |
| 14. Sergeant Smith also heard Plaintiff admit at the scene of the incident that he was convicted of rape in 1995 and spent 20 years in prison. | 14. Undisputed. |
| 15. During Sergeant Smith's interview with the babysitter, she advised that Plaintiff appeared to be filming her and Wakeland's daughter previously, but after learning about Plaintiff's criminal history, she was afraid for the safety of Wakeland's daughter when leaving the residence or letting her out to play. | 15. **Disputed.** Disputed that PASTOR MANNING was harassing some of the individuals at the Getty House. In fact, PASTOR MANNING did not know Wakeland even had a daughter. PASTOR MANNING did not harass her daughter. PASTOR MANNING had zero interactions with children at his time at the Getty House.<br><br>**Objection.** To the extent Defendant SMITH is "advised," such should be stricken as hearsay. |

**PLAINTIFF'S SEPARATE STATEMENT**

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
|---|---|
| | **Moving Party Evidence:** <br><br> See Declaration of Sergeant Smith ("Smith Decl.") at ¶ 10. <br><br> **Non-Moving Party Evidence:** <br><br> Exhibit A, Sherman Manning Depo., P. 75:11-24; P. 128:16-25 and 129: 1-23; P. 139:11-25; P. 211:12-19; P. 217:8-25 to P. 218:1-2, 11-20; <br><br> Exhibit B, Video of Defendant SMITH and MANNING. |
| 16. Based on Sergeant Smith's observations and the information obtained during the interviews she conducted, she believed there was probable cause to arrest Plaintiff. Therefore, based upon such observations and investigations and the observations and investigations of other officers, Plaintiff was placed under arrest. | 16. **Partially Disputed.** Disputed that PASTOR MANNING was harassing some of the individuals at the Getty House. In fact, PASTOR MANNING did not know Wakeland even had a daughter. PASTOR MANNING did not harass her daughter. PASTOR MANNING had zero interactions with children at his time at the Getty House. <br><br> **Objection.** Legal conclusion. |

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
| --- | --- |
| | **Moving Party Evidence:**<br><br>See Declaration of Sergeant Smith ("Smith Decl.") at ¶ 14.<br><br>**Non-Moving Party Evidence:**<br><br>Exhibit A, Sherman Manning Depo., P. 75:11-24; P. 128:16-25 and 129: 1-23; P. 139:11-25; P. 211:12-19; P. 217:8-25 to P. 218:1-2, 11-20.<br><br>Exhibit B, Video of Defendant SMITH and MANNING. |
| 17. Ms. Wakeland did not direct the arrest and was not involved in the arrest, nor did Sergeant Smith inform Ms. Wakeland of the arrest. | 17. **Disputed.**<br>Disputed that Wakeland was not involved in the arrest.<br><br>**Moving Party Evidence:**<br><br>See Declaration of Sergeant Smith ("Smith Decl.") at ¶ 15.<br><br>**Non-Moving Party Evidence:**<br><br>Exhibit A, Sherman Manning Depo., P. 211:12-19; 229:5-7.<br><br>Exhibit B, Video of Defendant SMITH and MANNING. |

**PLAINTIFF'S SEPARATE STATEMENT**

| UNCONTROVERTED FACT | PLAINTIFFS' RESPONSE TO DEFENDANTS' FACTS |
|---|---|
| | |
| 18. During Plaintiff's arrest, no force was used by Sergeant Smith or any other police officers, nor were any weapons drawn at any time. | 18. Undisputed. |
| 19. Ultimately, charges were not formally filed against Plaintiff and he was not prosecuted related to the arrest. | 19. Undisputed. |

## II.   PLAINTIFF'S CONCLUSIONS OF LAW

1.      Genuine disputes of material fact prevent this Court from granting summary judgment.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

2.      As to Plaintiff's Second Cause of Action for malicious prosecution, Plaintiff dismisses such claim.

3.      As to Plaintiff's Third Cause of Action for false arrest and false imprisonment, pursuant to California Government Code section 815.2(a), the CITY is liable for the wrongful conduct of Defendant SMITH.

| PLAINTIFF'S UNCONTROVERTED MATERIAL FACT ("PUMF") | PLAINTIFF'S SUPPORTING EVIDENCE |
|---|---|
| 20. In 1977, PASTOR MANNING became licensed to preach the | Exhibit A, Sherman Manning Depo., P. 196:6-25 and P. 197:1-13. |

| PLAINTIFF'S UNCONTROVERTED MATERIAL FACT ("PUMF") | PLAINTIFF'S' SUPPORTING EVIDENCE |
|---|---|
| gospel in Atlanta Georgia. | |
| 21. PASTOR MANNING is a pastor to the homeless who provides services to the homeless. | Exhibit A, Sherman Manning Depo., P. 15:24-25 and P. 16:1-22. |
| 22. Several days before April 28, 2020, PASTOR MANNING organized a protest outside of the Getty House demanding that the mayor of Los Angeles house the homeless people of Los Angeles during the COVID-10 emergency. | Exhibit A, Sherman Manning Depo., P. 8:1-15. |
| 23. In connection with the protest, PASTOR MANNING also spoke out on behalf of the homeless, spoke to members of the press, and spoke with members of the mayor's team. | Exhibit A, Sherman Manning Depo., P. 8:15-25. |
| 24. Several days before April 28, 2020, members of the mayor's team attempted to meet with PASTOR MANNING in connection with the protest, but PASTOR MANNING did not meet with them. | Exhibit A, Sherman Manning Depo., P. 12:21-25 and P. 13: 1-25 and P. 14:1-4. |

| PLAINTIFF'S UNCONTROVERTED MATERIAL FACT ("PUMF") | PLAINTIFF'S' SUPPORTING EVIDENCE |
|---|---|
| | |
| 25. PASTOR MANNING wanted to bring homeless individuals with the proposed meeting with the mayor in order to prevent the situation from being "white washed." | Exhibit A, Sherman Manning Depo., P. 14:5-20. |
| 26. PASTOR MANNING wanted people actually impacted to have their voices heard by the mayor and that is another reason why he wanted to include homeless people in the meeting. | Exhibit A, Sherman Manning Depo., P. 15:5-20. |
| 27. The protest lasted approximately five days up until PASTOR MANNING was arrested. | Exhibit A, Sherman Manning Depo., P. 24:5-9. |
| 28. During the protest, PASTOR MANNING never had any contact with a child, interactions with a child, or the mayor's daughter. | Exhibit A, Sherman Manning Depo., P. 21:8-15; P. 75:11-24; P. 128:16-25 and 129: 1-23; P. 139:11-25; P. 211:12-19; P. 217:8-25 to P. 218:1-2, 11-20. |

| PLAINTIFF'S UNCONTROVERTED MATERIAL FACT ("PUMF") | PLAINTIFF'S' SUPPORTING EVIDENCE |
|---|---|
| 29. In fact, PASTOR MANNING did not even know the mayor had a child. | Exhibit A, Sherman Manning Depo., P. 21:8-15. |
| 30. During the five day protest, PASTOR MANNING protested outside 100 yards away from the Getty House. | Exhibit A, Sherman Manning Depo., P. 24:5-14. |
| 31. A LAPD Sergeant measured 100 feet by walking with PASTOR MANNING and measuring with his feet. | Exhibit A, Sherman Manning Depo., P. 138:3-24; P. 214:9-25 and 215:1-12; P. 229:15-24. |
| 32. After the LAPD Sergeant measured the 100 feet, PASTOR MANNING ensured that he remained behind the 100 feet parameters. | Exhibit A, Sherman Manning Depo., P. 214:9-25 and P. 215:1-12. |
| 33. PASTOR MANNING was specifically instructed that if he stood 100 feet away from the Getty House he would be okay. | Exhibit A, Sherman Manning Depo., P. 227:14-25 and P. 215:1-12; P. 229:15-24.<br><br>Exhibit B, Video of Defendant SMITH and MANNING. |

| PLAINTIFF'S UNCONTROVERTED MATERIAL FACT ("PUMF") | PLAINTIFF'S' SUPPORTING EVIDENCE |
|---|---|
| | At the 4:54 time mark of the video, Defendant SMITH gives PASTOR MANNING a warning that if he steps within the boundary, he would be arrested. As Defendant SMITH gives such warning, SMITH signals towards the front of the property. |
| 34. PASTOR MANNING's first interaction with Defendant SMITH was wherein Defendant SMITH told PASTOR MANNING that he was "okay" and to stay 100 feet away. | Exhibit A, Sherman Manning Depo., P. 253:22-25; P.254:1-3 and 8-14. |
| 35. Despite PASTOR MANNING being told by Defendant SMITH that he was ok not 100 feet within the Getty House, Defendant SMITH arrested PASTOR MANNING. | Exhibit A, Sherman Manning Depo., P. 253:22-25; P.254:1-3 and 8-14.<br><br>Exhibit B, Video of Defendant SMITH and MANNING. At the 4:54 time mark of the video, Defendant SMITH gives PASTOR MANNING a warning that if he steps within the boundary, he would be arrested. As Defendant SMITH gives such warning, SMITH |

| PLAINTIFF'S UNCONTROVERTED MATERIAL FACT ("PUMF") | PLAINTIFF'S' SUPPORTING EVIDENCE |
|---|---|
| | signals towards the front of the property. |
| 36. 45 minutes to an hour from the interaction seen in the lives stream video (Exhibit B), Defendant SMITH arrested PASTOR MANNING. | Exhibit A, Sherman Manning Depo., P. 128:2-15. |
| 37. Defendant SMITH and Wakeland conjured a plan to arrest PASTOR manning and stop his protest. | Exhibit A, Sherman Manning Depo., P. 106:1-25, P. 108:1-25 and P. 109:1-15. |
| 38. Indeed, there were five other people present during the protest at the time of the arrest but only PASTOR MANNING was arrested. | See Declaration of Sergeant Smith ("Smith Decl.") at ¶ 14. |
| 39. On December 6, 2020, at least 50 protesters gathered outside of the Getty House for a protest. During such protests, LAPD only arrested one protester – not the person who allegedly violated the noise ordinance – and the City Attorney's office | Exhibit C, Complaint in Greg Akili, et al. v. City of Los Angeles, et al. Case No. 2:21-cv-7259-PA-AFM. |

| PLAINTIFF'S UNCONTROVERTED MATERIAL FACT ("PUMF") | PLAINTIFF'S' SUPPORTING EVIDENCE |
|---|---|
| declined to file charges. | |
| 40. On June 2, 2020, at approximately 1542 hours, 100-200 protester gathered outside of the Getty House but there were no reports arrests. | Exhibit D, LAPD After Action Report for 2020 George Floyd Protest, Page 174 of Report. |
| 41. On June 2, 2020, at approximately 2050 hours, 150 protesters gathered outside of the Getty House were arrested for curfew violations, not violations of Los Angeles Municipal Code § 56.45(e). | Exhibit D, LAPD After Action Report for 2020 George Floyd Protest, Page 178 of Report. |
| 42. On June 4, 2020, at approximately 2050 hours, 300 protesters gathered outside of the Getty House but there were no reports arrests. | Exhibit D, LAPD After Action Report for 2020 George Floyd Protest, Page 193 of Report. |

Dated: November 9, 2022

**LAW OFFICES OF HUMBERTO GUIZAR**

By: _____
CHRISTIAN CONTRERAS
Attorney for Plaintiff
SHERMAN MANNING